*Franklin,*
December,
1814.

Elisha Barney

*vs.*

Truman Currier, Luther More, and Moses Jewett.

### In Chancery.

Notice to one of two or more partners of a prior unrecorded deed, *is notice to all* the partners, and will render void a subsequent deed of the same land to all the partners.

THIS was a bill in Chancery in which the Orator stated, in substance, that on the 20th day of May, 1807, the Orator being indebted to Levi Hungerford in the sum of $205, as security therefor, conveyed to the said Hungerford, by his deed of that date, a certain farm of land situate in Swanton in the County of Franklin, containing one hundred acres; and at the same time, the said Levi Hungerford executed a bond to the Orator with a condition, that, if the Orator should, on the first day of September, 1807, pay to the said Levi Hungerford the said sum of $205 with interest, the said Hungerford should reconvey the said farm to the Orator.—That it was considered by the parties as a mortgage.—That on the 25th day of July, 1807, the said sum of $205 not having been paid, and the said Hungerford being indebted in the same sum to Truman Currier, Luther More, and Moses Jewett, who then carried on the business of saddlery in partnership, the said Luther More and Moses Jewett residing in Burlington in the County of Chittenden, and the said Currier residing in said Swanton, there carrying on the said business, as sole agent and manager for said company, in payment of said debt so due from him the said Hungerford to said company, as aforesaid, assigned, sold and conveyed all his right in said farm to the said Truman Currier, Luther More, and Moses Jewett.— That they the said Currier, More, and Jewett, at the time of receiving said conveyance of said farm from the said Hungerford, had full knowledge of the aforesaid agreement between the Orator and the said Levi Hungerford, and of the said bond given by said Hungerford to the Orator for a reconveyance of the premises as aforesaid; and they actually received said conveyance from the said Levi Hungerford, as a security for the said sum of $205 with interest.—That afterwards, on the 25th day of July, 1809, the Orator

*Franklin,*
December,
1814.

Barney
*vs*
Currier
et al.

paid to the said Truman Currier, then acting for and in behalf of said company, the said sum of $205 with the interest thereon due; and the said Currier, for and in behalf of said company, received the same of the Orator, as and for the redemption of the said farm from the said mortgage, and did thereupon agree with the Orator to reconvey to him the said farm. And afterwards, to wit, at Swanton aforesaid, on the 26th day of July aforesaid, a deed was made out accordingly by the said Currier, from him the said Currier, More and Jewett to the Orator, for the purpose of reconveying said farm to the Orator, which was executed by the said Currier; and, as the said More and Jewett were absent at Burlington aforesaid, the said Currier agreed to procure the said More and Jewett to execute the same, and received the instrument by him so executed for that purpose. But the said Currier, combining with the said More and Jewett to defraud the Orator, did fraudulently convey all his right to said premises to the said Jewett.—And that the said Jewett has with a like fraudulent intent procured from the said More a conveyance of said premises, and has commenced an action of ejectment against the Orator to recover possession—praying relief, &c.

Truman Currier did not appear, and the bill as to him, was taken as confessed.

Luther More appeared, and answered, that in July, 1806, he entered into partnership in the saddling business, with Moses Jewett, one of the defendants, at Burlington.—That in September following, he and the said Jewett entered into partnership with Truman Currier the other defendant, for the purpose of carrying on said business at Swanton.—That the said Currier was intrusted with the sole management of the business at Swanton, and that he the said More had no personal knowledge of the management of the business there.—That afterwards, in September, 1807, he, by the consent of the other partners, withdrew from the concern at Swanton, and assigned his interest therein to the defendant, Moses Jewett, who agreed to pay all the company debts, and indemnify him the said More against them; and that he had no further concern with the business at Swanton.—That he had no knowledge of the transaction between the Orator, Hungerford and Currier, relating to the premises.—But that some time after he had withdrawn from said

concern at Swanton, (the time he could not recollect) the said Mo- *Franklin,* ses Jewett applied to him for a release of his right in the premises ; December, and on such application, and in pursuance of his former agreement, 1814. on withdrawing from the concern at Swanton, he did make a re- Barney lease to the said Jewett accordingly, having no knowledge of the *vs.* Orator's claim to the premises. Currier et al.

Moses Jewett, in his answer, stated the several partnerships, and the withdrawing of Luther More from the concern at Swanton, and the assignment of More's share to him the said Jewett, as stated in the answer of More; and then proceeded to state, that in October, 1808, the partnership between him and Truman Currier was dissolved by mutual consent.—That the said Currier was then indebted to him to the amount of fifteen hundred dollars, in part payment of which he received from said Currier a conveyance of his share in the premises, as purchased of Levi Hungerford, at the sum or price of five hundred dollars—the whole of the premises being estimated at fifteen hundred dollars. He admitted, that about that time or before, he had heard a report that Truman Currier had received a sum of money from the Orator, Barney, and had agreed to convey to him the premises; on which he made inquiry of Currier as to the truth of the report, who said that the Orator, Barney, held his receipt for a sum of money, for which he had agreed to convey to him (Barney) his (Currier's) share of the premises, being one third part.—That he had offered so to convey, but said Barney had wholly refused to accept such conveyance. And the said Jewett in his answer, denied that he had ever agreed to convey, or procure a conveyance of the whole premises from the partners. He conceded that Truman Currier was the only acting partner in the concern at Swanton. He denied that he had himself received any consideration from the Orator, on account of the premises, and that he had no personal knowledge how the partnership business at Swanton was conducted, or of the purchase from Levi Hungerford, or of whom Currier purchased the premises.

The answers were traversed, and the following exhibits and evidence appeared on trial. An office copy of the Orator's deed to Levi Hungerford was produced, and the bond from Hungerford to the Orator, with the condition, as set forth in the bill. It was also proved that Truman Currier, at the time of his puachase from

*Franklin,*
December,
1814.

Barney
*vs*
Currier
et al.

Hungerford, was fully informed of the bond and condition, and of the nature of that transaction, and that he took the conveyance, as was then well understood, subject to that condition; and that the consideration was no more than the sum due from the Orator to Hungerford, the consideration expressed in the deed from Hungerford to Currier, and that he took it on account of a partnership debt to that amount, due from Hungerford to the company. Hungerford's receipt for the money from the Orator was also produced and proved, and also his agreement to reconvey his execution of an instrument for that purpose, intended to be executed by the other two partners, and his receipt for that instrument, containing a promise to procure it to be executed by More and Jewett.

*Brayton,* for the plaintiff.

*E. Keyes* and *Allen* for the defendants.

It was contended on the part of the Orator, that the deed to Hungerford, with the bond from Hungerford to the Orator executed at the same time, with a condition for a reconveyance, on the payment of a certain sum of money, at a particular time specified, constituted a mortgage in equity, between the original parties, although the bond was not put on record with the deed; and that it would continue a mortgage in the hands of all subsequent purchasers, having a knowledge of the plaintiff's equity.—That, as Truman Currier, purchased with full notice of the Orator's equity, valued the premises accordingly—paid a consideration only to the amount of the debt intended to be secured to Hungerford on the premises, it was the strongest possible case of notice to Currier. And as he took it for a partnership debt, and as it is acknowledged by all the defendants that he was the only acting partner, and sole agent for the company in their concern at Swanton, notice to him was notice to all the partners.

On the part of the defendant, it was contended, that however a deed of conveyance of land, with a separate defeasance, or a bond for the reconveyance by the grantee, executed at the same time, but not recorded, might operate in equity as a mortgage between the original parties and their heirs; yet, by our statute, it cannot have that effect against creditors or subsequent *bona fide* purchasers for a valuable consideration.—They have only to look to the

records for the title to lands, and for incumbrances on them. And they must hold against a prior unrecorded deed, unless actual notice of such prior deed be proved.—That this is not the case with Jewett, in whom the legal title was vested for a valuable consideration.

*Franklin,*
December,
1814.

Barney
*vs.*
Currier
et al.

CHIPMAN, Ch. J. delivered the opinion of the Court.

It is true that by the 5th Section of the Act regulating conveyances of real estates, it is enacted, that no deed of bargain and sale, mortgage or other conveyance in fee simple, of any lands, tenements or hereditaments, shall be good and effectual in law, to hold such lands, tenements or hereditaments, against any other person or persons but the grantor or grantors and their heirs only, unless the deed or deeds thereof, be acknowledged and recorded, as is provided in the act; but we must take this in connexion with the 14th Section of the same Statute, which provides, "That all fraudulent and deceitful conveyances of any lands, tenements or hereditaments, procured, made or suffered, with intent to avoid any right, debt or duty of any person or persons, shall as against such person or persons, whose right, debt or duty is so intended to be avoided, his, her, or their heirs or assigns, be utterly void, any false pretence or feigned consideration to the contrary notwithstanding.

In the construction of this statute, these two sections must be taken together. For one person knowing of the right of another, wanting some thing only in form, to its completion, for instance the deed not on record, to intercept that right by taking a conveyance, legal in its form, and procuring it to be first recorded, is a gross fraud, and clearly within the 14th Section of the Act above recited. In such case the deed is void, as well at law as in equity; and if brought before a Court of equity, it will generally afford sufficient relief, to declare such subsequent deed void: but if the fraud has extended, to destroy or intercept the evidence of the prior right, the Court will suffer the fraudulent deed to stand in the chain of title, and decree a conveyance to the person entitled in equity. This principle will extend to every person sought to be injured by the fraudulent act, according to his right; not only to him who claims an absolute right, but to all who claim a conditional, defeasable or equitable interest—as well to a mortgagor, in respect to his equitable interest, his right of redemption, as to the mortgagee, in respect

Franklin,
December,
1814.

Barney
vs.
Currier
et al.

to his legal lien for the security of his debt. The principle is per-
fectly obvious, and the construction not only consistent with the gen-
eral objects and design of the statute, but even necessary to their
attainment.   A contrary construction would, instead of a preven-
tion, render the statute a protection of fraud.   And, beside, it has
been so long established, that it cannot be permitted now to be
shaken.——It is no less firmly established that notice to the agent is
notice to the principal, and shall affect him the same as personal
notice.

   To apply this principle to the present case : Truman Currier
was himself a principal, and being in the concern at Swanton the
only acting partner, he was to all intents the agent of his co-partners,
the other defendants.   He agreed, in behalf of the partnership, to
take a conveyance of the premises to satisfy or secure a partnership
debt ; and he was informed of the Orator's right——that Levi Hun
gerford held the premises, merely as a security for a debt due to
him from the Orator.  As Hungerford then intended to sell, so
Currier must have intended to purchase, subject to the Orator's
right of redemption, and gave a consideration accordingly.   The
amount of the debt due from the Orator to Hungerford, was made
the consideration of the deed which Currier received.   The deed
of conveyance was in form absolute and unconditional.   This
might or might not have been fraudulent in its inception, according
to the use it was intended to make of it afterwards.   By this know-
ledge, and by these acts of their acknowledged agent, the other de-
fendants are bound equally in law, equity and good conscience. The
conveyance from Hungerford, was taken to all the defendants,
members of the partnership.   Truman Currier went farther——he
received the redemption-money of the Orator, the full amount of
the debt due the company, to secure the payment of which, the con-
veyance was made : He thereby bound the other defendants as well
as himself to convey the premises to the Orator.   He did, on his
part, execute a deed of reconveyance, prepared for him and the
other defendants to execute——he took it, and agreed to procure it to
be executed by the other defendants.   Here the fraud began to ap-
pear.   He neglected to procure the deed to be executed by the oth-
er defendants, and took measures to defeat the Orator's claim and
preredemption, although he had received the full sum of the re-

demption, and conveyed his share, one third part, to Moses Jewett,

one of the other defendants.

Luther More does not appear to be at all implicated in this foul transaction. He had, by consent, withdrawn from the partnership concern in Swanton, and it does not appear that he had any personal knowledge of this transaction; and although his name had been made use of in the conveyance from Hungerford, (he being then a partner) he appears very honestly, on Jewett's application, to have released his share as he supposed he was in equity and good conscience bound to do; but Jewett, the other defendant, is deeply implicated. He insists, in his answer, that he is a *bona fide* purchaser for a valuable consideration; but he concedes, that at the time he took the deed from Currier, he had heard a report that he (Currier) had received a sum of money from the Orator, and had agreed to convey the premises to him. He also concedes, that on inquiry, Currier acknowledged that the Orator held such receipt which he had given him, and that he had agreed to convey to the Orator one third part of the premises, and that the Orator refused to accept such conveyance, but that Currier denied that he had ever agreed to convey the whole of the premises to the Orator, or to procure a conveyance from the other partners. The manner of expression, and the degree of caution used, clearly show that Jewett had been correctly informed of the whole transaction, and yet he claims to hold the premises against the Orator, contrary to equity and good conscience.

As the evidence of title is now in Jewett, there must be a decree that he convey the premises to the Orator, and that he and Currier pay costs; and that Luther More, the other defendant, be dismissed without costs.