BENJAMIN STEVENS, TRUMAN YAW AND DUTTON & CLARK *v.*
FATIMA GOODENOUGH.

[IN CHANCERY.]

*Subrogation. Equities on land. Notice, &c.*

The defendant bought a farm for which she was to pay $700, and paid $500, and her husband joined with her and mortgaged the same to secure the payment of the said $200; subsequently she conveyed a certain portion of the farm to him and he agreed to pay the $200; after this, defendant was divorced from her husband, and he neglecting to pay the $200, the mortgagee foreclosed, and she, with certain creditors of her husband who had levied upon the farm for debts of her husband, joined with them and paid off the mortgage in the proportion of their claims; it turned out that the levies were defective and void, and they brought their bill in chancery to compel her to refund the money so advanced by them, she having subsequently levied upon the interest of her late husband to enforce payment of the money advanced by her for the redemption of the farm—*Held*—that plaintiffs were chargeable with notice of the equity ·resting upon the land on which their levies were made; and that under the circumstances, defendant had a right to secure her debt on the property of her late husband, and having done so, she is not only the first in diligence, but the first in right.

*It was also held*, that defendant had the right, by subrogation, to the remedies and securities in the hands of the mortgagee to compel payment from G. (her late husband) or from those claiming under him; and the payment by defendant having been after her divorce from G., she had the right to prosecute G. for the money paid, and levy her execution upon G's. property for its satisfaction.

APPEAL from the court of chancery.

The bill charges, that January 19, 1850, the defendant and Gaius R. Goodenough, her then husband, owned as tenants in common a farm situated partly in Brattleboro and partly in Guilford, of which the defendant owned five undivided eighths for life, and Gaius R. the other three-eighths, and the remainder of the five-eighths at defendant's decease. That Gaius R. was indebted to the orators severally, and that they each sued him before a justice of the peace, and obtained judgments. Dutton & Clark for $42,-64; Lynde for $32,19; Yaw for $13,22; and Stevens for $39,79.

That they took out their several executions and levied them January 19, 1850, on Gaius R's. three-eighths of said farm. That Gardiner Briggs, as executor of Joel Bolster, had a mortgage of the whole farm executed to him by defendant and Gaius R. of a

date earlier than the levies; that Briggs foreclosed his mortgage April Term, 1850. That at the February Term, of the Supreme Court, 1850, the defendant obtained a bill of divorce from Gaius R. That the orators were compelled, in order to obtain the land under the levies, to pay up the decree, and that shortly before the 28th of April, 1850, it was agreed between Edward Kirkland, Esq., the orators' attorney, and Asa Keyes, Esq., the defendant's attorney, that the orators should pay as their proportion of the sum named in the decree $100,18, and that the defendant should pay the rest—that accordingly on the 28th day of April, 1850, the orators believing their levies to be good and acting in good faith, paid to the clerk of the court for the redemption of the premises $100,18, of which Dutton & Clark paid as their proportional share $30,18; Lynde $28,86; Yaw $10,18; and Stevens $30,96, and the defendant paid the rest. That the orators brought their petition against the defendant for partition of the farm at the September Term, 1850, and the defendant appeared and resisted the petition, and at the April Term, 1851, the court dismissed the petition on the ground that owing to the negligence of the constable, who made the levies, in not making his returns to the justice, the said levies were void. That the defendant sued Gaius R. and attached this farm October 21, 1850, and recovered judgment against him September Term, 1851, for $196,70, took her execution and levied it, November 25, 1851, on all that part of the farm lying in Brattleboro, and his whole interest in that part of the farm was set off to her. That May 6, 1851, Gaius R. conveyed his interest in the farm to said Stevens, by warranty deed in trust, for the benefit of the said Stevens and the other orators. That the defendant from January 19, 1850, and long before, and till now has been in possession of said farm, taking the whole profits, &c.

*Prayer of the bill,* That defendant may be decreed to pay to each orator severally the sums paid by each, to redeem the Briggs' mortgage, with interest from the time of such payment, and for further relief, &c.

The defendant answered, and says that she is the daughter of Joel Bolster, who died June 1, 1845, possessed of the farm in question; that Gardiner Briggs was appointed executor of his will; that she had a claim against his estate allowed by the commissioners at $500. That the executor, Briggs, March 8, 1847,

obtained license from the probate court to sell the farm, and sold it to her March 30, 1848, for $700 ; that she had married since her father's death, and that she paid $500, of said price by her claim against the estate, and she and her husband, Gaius R. gave their note to Briggs, for the balance $200, and mortgaged the premises to him to secure it. That difficulties arose between her and her husband, he complaining that he was holden to pay the note of $200, to Briggs, and still he had no title to the land ; that for the purpose of quieting the troubles between them, she finally agreed to let him have three-eighths of the farm, and the other five-eighths at her decease, on his agreeing to pay the $200 note to Briggs ; and to carry out the agreement, she conveyed the farm, Sept. 16, 1848, to said Samuel Dutton, and he on same day, conveyed to her five-eighths for life, and to her husband three-eighths and the remainder at the termination of her life estate, her husband then agreeing to pay the $200 note to Briggs ; that no writings were made about this agreement of his to pay said note, because he was already legally holden to pay it, and she was not, on account of her coverture, and no writings were thought necessary ; that all this was well known to said Dutton & Clark, at the time of said Dutton making said conveyance, and to the other orators before their said levies. That said Gaius R. neglected to pay said note, and Briggs foreclosed the mortgage, and the time limited for payment was April 28, 1850 ; that at the February Term, of Supreme Court, 1850, she obtained a divorce from her husband, and finding he was making no preparations to redeem the mortgage, she made preparations to pay Briggs' claim, if he should not. She admits that the orators had effected some kind of lien on Gaius R.'s three-eighths of the farm, which liens she supposed to be valid, but she believed then and does still, and insists that if their lien had been valid, they took said three-eighths subject to the same equities under which said Gaius R. held the same, which was to pay off the whole of said mortgage. That shortly before April 28, 1850, when Briggs' decree would become absolute, she called on Asa Keyes, Esq., the attorney and solicitor of Briggs in the foreclosure, to ascertain the amount to be paid to redeem the land, who told her the amount due on the 28th April, 1850, would be $264,48, which she must see paid, and further told her that if said Gaius R. or those who had levied upon his three-eighths should pay their

proportion, she would have only $165,30, to pay; that she paid that sum and understood the orators paid the balance; denies that any agreement was made between her and the orators, or between their attorney and hers; denies any understanding on the subject between her and the orators, or between their attorney and hers; denies that said Keyes had any power to act for her; denies that she ever employed him in anywise relating to said mortgage, or foreclosure or redemption of the same; insists that whatever she said to him was as to the attorney of Briggs, and not as to her attorney; says she knows nothing of the alleged agreement between said Keyes and Kirkland, and refers orators to their proof; admits the orators' levies on the land and their payment of the portion of the mortgage money as set forth in the bill; admits the bringing of the petition for partition as alleged, that she opposed it, and its dismissal, but denies that the dismissal was for the cause alleged, but for other causes apparent of record in said petition; admits after her divorce, and being compelled to pay said $165,30, to redeem said mortgage, which she says it was the duty of said Gaius R. to pay, she sued him for the money paid, recovered judgment and levied her execution on his lands in Brattleboro, as she had a right to do, and said execution has been returned satisfied in part only; admits that she has occupied the premises and taken the profit, &c., from January 19, 1850, but avers that from January 19, 1850, till the close of February Term, of Supreme Court, same year, she occupied the same with the children of said Gaius R. as his lawful wife, that from the time of her divorce till the levy of her execution she occupied his three-eighths, but has during all that time from the rents &c., and her own industry supported his two minor children, and that said rents, &c. are a meagre remuneration for so doing; that since said levy she has occupied the premises in her own right, as neither Gaius R. nor any one under him has claimed the occupancy, and during all that time hitherto she has supported said minor children. Admits the execution of deed by Gaius R. to Stevens as alleged; insists that the orators having paid said money without any fraud, collusion, interference, concert, agreement or request of hers, but voluntarily coming in under said Gaius, they can have no greater equity against her than he could, if he had paid the money; insists that if said Gaius had made the payment he could have had no claim in equity against

her for reimbursement, and that orators have no such claim in equity; and that as she has obtained the premises in due course of law, equity will not disturb her in the enjoyment thereof, or compel her to make further advances in relation thereto.

The chancellor dismissed the bill and plaintiffs appealed.

*Wm. C. Bradley* for orators.

It is not particularly necessary to inquire how far the separate property of the wife was liable in equity for the payment of the whole note given by Fatima and her husband to Briggs, as to which, see 2 P. Wms. 144, *Clark* v. *Miller,* 2 Aik. 379, 17 Ves. 365, 18 Ves. 258, because it is admitted that he received no consideration for so doing, and in such cases, by the decisions, (*Bogot* v. *Oughton,* 1 P. Wms. 348,) it is questioned whether even his personal estate would have been holden in equity so long as her estate was sufficient; it was on his demand of security for his liabilities at law, that he required the conveyance of part of the equity of redemption of the mortgaged estate. He has paid nothing, and she with his creditors paid the amount of the mortgage money.

And the consideration having failed upon which the creditors in good faith joined her in paying the money, and she without any new payment or consideration having obtained the whole property with full knowledge of the circumstances, it would seem but equitable, that having received the benefit she should bear the burden of refunding the money.

It is attempted to be made out, that she was not conversant of or privy to all the circumstances of the payment, because her attorney acted in a double character; it would be singular indeed if such an evasion could avail here. If he received her money as the attorney of Briggs only, it must be recollected, that he received the full amount of the mortgage and that the creditors being kept in ignorance of that fact were directly misled to pay a part, and as she does not suggest to the contrary, it must be presumed that such part was returned to her and became our money in her hands.

If he acted as the attorney of Fatima, as he was supposed to do, the previous arrangements for the payment and the transactions accompanying it must be held to be the same, as if she was a party thereto, and they sufficiently show that it was neither gratuitous

or voluntary, but made through mutual mistake of both parties in relation to the title of the creditors, and it will hardly be contended, that money paid on such grounds ought not to be refunded by some one ; it need not be the husband, for he never requested or assented to it, and if it be put on the ground of benefit, it resulted to Fatima. The creditors were never really substituted to the rights of any person.

If they had made out their title, they would have been substituted to the rights of the mortgagee, Briggs. *Baldwin* v. *Banister*, 3 P. Wms. 251. 2 Story's Equity 1023.

And it was not necessary to join either the husband or Briggs, as partners, they having no further interest in the premises than what can be fully covered by a decree between the parties in the present suit. *Payne* v. *Hathaway*, 2 Vt. 212. *Day* v. *Cummings*, Vt. 496.

*A. Keyes* for defendant.

The Briggs' debt was originally owing by defendant, but by the marriage and giving of the note and mortgage, it became the debt of Gaius R. Goodenough, and he alone was holden to pay it.

I. The payment of the Briggs' mortgage was the consideration of the conveyance of three-eighths to Gaius R., and the defendant had a *lien* thereon, until the consideration was paid by him. *Manly* v. *Slasson*, 21 Vt. 271.

1. For Dutton & Clark had notice of the consideration at the time of the conveyance, and notice of the non-payment at the time of their *levy*.

2. The other orators, making their levies at the same time with Dutton & Clark, and in concert with them, are presumed to have the same information.

3. These conveyances and the Briggs' note and mortgage all on record, were sufficient to put the orators upon inquiry, and amount to notice to them of the *lien*. Story's Equity 388. *McDaniels* v. *Flower Brook M. Co.*, 22 Vt. 274.

4. At the time of the orator's levy, and a long time before, the defendant was in actual possession, taking the rents and profits ; this was sufficient to put them on inquiry and becomes notice. *Chesterman* v. *Gardner*, 5 Johns. C. R. 29.

II. By the deed of three-eighths to Gaius R. Goodenough, and

XXVI 44

his contract to pay the Briggs' debt, Gaius R. became the principal in said debt, and the defendant a mere surety. *McDaniels v. Flower Brook M. Co.*, 22 Vt. 274. And this was well known to Dutton & Clark and the rest of the orators.

And if she being in fact surety was compelled to pay off any part of that incumbrance, she had an equity to be subrogated to all the rights of Briggs, against Gaius R. and all persons claiming under him. 22 Vt. 274.

But if the principal or those claiming under him pay off the incumbrance, they can have no equity against the surety.

If we are right in this, and her equity of subrogation is established, she may enforce that right in any of the modes provided by law or chancery, provided she does not materially prejudice the rights of the principals.

III. If the orators have any right of subrogation they derive that right from Gaius R., and that right is an equitable, and not a legal one. But the purchaser of an equitable right purchases *at his peril*, and takes the property burdened with all the prior equities charged upon it. 7 Cranch 34. *Russell* v. *Clark's Ex.*, 7 Cranch 69.

The orators complain, that defendant held her peace and let them pay part of the incumbrance. This she did because she knew and always insisted, that they ought to pay the whole incumbrance. Had they done this as Gaius R. had agreed, she would have had no occasion to resist partition ; no occasion for her suit and levy, and they might have enjoyed their levy however erroneous. But by endeavoring to throw their burdens upon her, contrary to equity and good conscience, they may, when it is too late, become acquainted with the maxim, " *He that asks for equity must first do equity.*"

The opinion of the court was delivered by

ISHAM, J. We are satisfied that this bill was properly dismissed by the chancellor. The deed of Gardner Briggs, and the payment of the purchase money by Fatima Goodenough, vested in her, as her separate property, the land described in the deed. The application of five hundred dollars due to her from the estate of her father, was clearly a payment of that character. The same may be said of the note of two hundred dollars, signed by her and

her husband, which was secured by mortgage on the premises, and was given to Briggs, for the balance due on the purchase of the land. At the time it was given, she, in equity, stood as the principal, and her husband as her surety. But their relation, as signers of that note, was changed by the arrangement made September 16, 1848, which was effected through the intervention of Samuel Dutton, as trustee. By that arrangement, a life estate to five-eighths of this land was conveyed to Fatima Goodenough, and an estate in fee to three-eighths of the land, and the reversion of the five-eighths was conveyed to her husband, Gaius R. Goodenough. For this property, he assumed the payment of that note. From that time, he became the principal, and she stood as his surety. For the payment of that note, her separate property, as well as that which had been conveyed to her husband, was mortgaged, and held as security by the creditor; but *as between them, the charge rested upon the property alone, which had been conveyed to him.*

The plaintiffs, in taking the interest of Gaius R. Goodenough, in the land conveyed to him, on their executions, could only take the same, subject to the incumbrance of the mortgage to Briggs, and treat that incumbrance as resting upon that portion of these premises. This is emphatically true, if they had knowledge of the arrangement between Fatima and her husband, and that the conveyance of the premises, on which their executions were levied, was made to him for that purpose; for it is a general principle, that when one takes the title of land with notice of a prior equity, he holds the same subject to that equity. That Samuel Dutton, of the firm of Dutton & Clark, had actual knowledge of that arrangement, clearly appears in the case. He was the trustee through whom the arrangement was made. He, therefore, knew that the Briggs' mortgage was for Gaius R. to pay; that the property which he and the other creditors had taken, was conveyed to Gaius R. for that purpose, and that Fatima and her property was thereby to be relieved from any further liability on that mortgage debt. This notice to Dutton, was notice to Clark, his partner. *Barney* v. *Curren*, 1 D. Chip. 315. If the other creditors have such a joint interest with Dutton & Clark, as will enable them to join in the prosecution of this bill, it would on the same principle equally seem to follow, that notice to one should be treated as notice to all; certainly, they are not permitted in this suit to deny such a joint

interest; for if their interests are distinct and several, they cannot join, and this suit, on either ground, is defeated.    Comp. Stat. 208 § 3.    Aside from this consideration, they had the means of obtaining notice of all the facts in the case, they were put on inquiry, and that is equivalent to notice, and will charge them with the consequences of actual knowledge. *McDaniels* v. *Flower Brook Man. Co.*, 22 Vt. 274.    *Harper* v. *Rives*, Freeman's Ch. R. 323.

If these plaintiffs are chargeable with notice of the equity resting upon the land on which their levies were made, there is no propriety in saying, that because their levies have proved defective, they can sustain this bill, and compel Fatima Goodenough to repay the money which they had advanced, for the purpose of removing the incumbrance on the land on which they had levied their executions.    That portion of these premises, redeemed by that payment, did not belong to her ; she had no interest in them, except to indemnify her as surety ; neither did they come into her hands as a consequence of that payment.    But on the contrary, when that incumbrance was removed, and the levies proved defective, the title of the land unincumbered was in Gaius R. Goodenough.    He was the person directly benefitted by that payment of the plaintiffs, as the money was applied in payment of a debt which he was primarily obligated to pay.    If an obligation rests upon any one to repay the plaintiffs the money advanced by them, it would seem to rest upon him, rather than upon the defendant.

Fatima Goodenough and her husband were divorced in February, 1850.    The equity of redemption on the mortgage given to Briggs, expired under the decree of the chancellor, on the 28th of April, in the same year.    The neglect of Gaius R. Goodenough to pay the amount of that decree caused an entire failure of the consideration for which the property was conveyed to him, and imposed upon Fatima Goodenough, the necessity of making the payment of $165,30, to discharge her liability as surety on that note, and to relieve her property from forfeiture under that decree.    The balance due on that decree was paid by these plaintiffs as creditors of Gaius R. to redeem the property levied upon by their executions.    On the payment of that money by Fatima, after her divorce, she became a creditor at law of Gaius R. Goodenough, and was at liberty to adopt either of two courses to obtain the re-payment of the money she had advanced.    In the first place, she had

the right, by subrogation, to the remedies and securities in the hands of Briggs, as mortgagee, to compel the payment of the amount from Gaius R. Goodenough, or from those claiming under him. Whatever rights the mortgagee had to compel payment of the debt to him, she too is entitled to obtain the re-payment of the same she has advanced. In the second place, the payment having been after her divorce, she had the right to prosecute Gaius R. for money paid, and levy her execution upon his property for its satisfaction. If she had adopted the first course, it is clear, that she could have enforced a foreclosure, not only against Gaius R. but all these plaintiffs, upon all the property included in the deed of Samuel Dutton; even if the levies of these plaintiffs had been good. In that event, they probably might have redeemed by paying the whole mortgage debt, but they would have had no claim against Fatima, on her property; for as to her, they have only paid what should have been paid by Gaius R. or those claiming under him. The rights, and equity of Fatima Goodenough, are none the less, because the levies of their executions have proved defective. That circumstance, whatever may be its effect as to Gaius R., can have no effect upon Fatima Goodenough. In commencing her suit at law and levying her execution upon a portion of the premises belonging to Gaius R. Goodenough, she has taken only a part of that to which she would have been entitled by subrogation, and her legal and equitable right to hold the same in satisfaction for the money she has advanced, is as great in one case as in the other. The truth of the case is really this. After Fatima Goodenough had paid that money in discharge of that incumbrance, she stood as the creditor of Gaius R. Goodenough to that amount. These plaintiffs having paid their money for the same purpose, it is possible, in equity at least, that they can be treated as creditors also; for in each case the money has been applied in payment of a debt which was for Gaius R. to pay. Under such circumstances, Fatima had a right to secure her debt on property belonging to Gaius R.; and having done so, she is not only the first in diligence, but the first in right.

There is another circumstance in this case affecting the equity of the plaintiffs' claim. The execution of Fatima Goodenough, was levied only upon the land lying in the town of Brattleboro, leaving all that portion of the premises lying in Guilford, which was included in the deed of Samuel Dutton, still in the hands of Gaius R.

Goodenough. This land it appears from the deed of Gaius R. to Benjamin Stevens, and from the bill, has been conveyed for the benefit of these plaintiffs ; and they now hold the same for that purpose. There is no propriety in saying, that they may hold the premises conveyed to them by that deed, and also claim from Fatima Goodenough, the re-payment of the money they respectively advanced. Whether the plaintiffs have a claim in equity for the re-payment of that money, against Gaius R. Goodenough, we are not called upon to decide. We think they have no such claim against the defendant.

The decree of the chancellor is affirmed.