ISAAC F. STURDIVANT and another *vs.* JOHN T. HULL.

*Promissory note — construction of—evidence in action on.*

The liability of the defendant, as the maker of a negotiable promissory note, must be determined by the instrument alone.

A note of the tenor: "Portland, Dec. 20, 1869. Four months after date, I promise to pay to the order of Sturdivant & Co., two hundred and twenty-five dollars. Value received. John T. Hull, Treas. St. Paul's Parish," binds Hull, personally; and it cannot be shown, by parol, that the intention of both parties, at the time of giving the note, was that the parish and not Hull should be bound.

Neither R. S. c. 1, § 4, clause XXI., nor c. 73, § 15 is applicable to such note.

ON EXCEPTIONS to the ruling of *Goddard,* J., of the superior court for the county of Cumberland, at the November term, 1870.

BARROWS, J. Assumpsit by the payees against the maker of a promissory note of the following tenor:

"$225.00            PORTLAND, Dec. 20, 1869.

| U.S.I.R. Stamp. 25 cents. |
|---|

Four months after date, I promise to pay to the order of Sturdivant & Co., two hundred and twenty-five dollars. Payable at either bank in Portland, with interest. Value received.     JOHN T. HULL, *Treas. St. Paul's Parish.*"

The signature to the note was not denied, but the defendant offered to prove, and if evidence *dehors* the note is admissible for that purpose, we must consider it as proved, that at the time the note was made, defendant was treasurer of St. Paul's Parish, and made the note in suit, in behalf of said parish and for their sole benefit, in renewal of a former note given by his predecessor, Moody, for lumber used in building their parish church, and that defendant never received any personal consideration or any consideration for the note, other than the foregoing. And that these facts were known to the plaintiffs when the note was given, and that the understanding and intention of both parties, then, was that it was the note of the parish and not of the defendant.

As the suit is between the original parties to the note, it follows that if the proffered evidence showed that there was no valid consideration for the defendant's promise, it should have been admitted. But such is not the case. It is not necessary that the consideration should have enured to the personal benefit of the promisor, and the surrender of the previous note, or the extension of the term of credit originally given to the parish for the lumber would, either of them, be a sufficient consideration for the defendant's note.

The case presents but two questions:

1. Whether the defendant's liability must be determined solely by the written instrument which he has subscribed, excluding the evidence above offered to control its construction?

2. If so, does the true construction of it make it his note, or that of the parish?

I. Now, when parties are competent witnesses, and stand ready

to testify (if allowed) not only to their own intentions, but to those of the other party to the contract, the wisdom of the long-established rule, which requires all parties to written contracts, at their peril, to state what they mean to abide by in the writing itself, and prohibits them from resorting to oral testimony to contradict or vary its terms, grows more apparent every day.

One of the illustrations of this rule, given by Mr. Greenleaf in his Treatise on Evidence, vol. 1, p. 320, ed. of 1842 (citing *Stackpole* v. *Arnold*, 11 Mass. 27), runs thus: "where one signed a promissory note in his own name, parol evidence was held inadmissible to show that he signed it as the agent of another, on whose property he had caused insurance to be effected by the plaintiff, at the owner's request."

When a man has deliberately said, in writing, "I promise to pay," and a valid consideration for the promise is shown, right and justice are not very likely to be the gainers by allowing him to retract and to undertake to prove that he did not actually mean, " I promise," but that he meant, and the other party understood that he meant, that some third party, whose promise the writing does not purport to be, undertook the payment.

It is better that a careless or ignorant agent should sometimes pay for his principal, than to subject the construction of valid written contracts to the manifold perversions, misapprehensions, and uncertainties of oral testimony.

And upon this point the decisions (although, in cases of like type with this, they are somewhat conflicting, or, at least, distinguished with scarcely a shade of difference, upon the question of the construction of the instrument itself) will be found concurring. *Andrews* v. *Estes*, 11 Maine, 270; *Hancock* v. *Fairfield*, 30 Maine, 299; *Slawson* v. *Loring*, 5 Allen, 342; *Draper* v. *Mass. Steam Heating Co.* 5 Allen, 338; *Barlow* v. *Cong. Soc. in Lee*, 8 Allen, 460; *Tucker Manuf. Co.* v. *Fairbanks*, 98 Mass. 104 and cases there cited.

Nor is this wholesome rule abrogated by any of our statute provisions touching the responsibility of principals upon contracts made

and executed by their authorized agents. R. S. of 1857, c. 73, § 15; Id. c. 1, § 4, clause xxi. Even if those provisions should be held to apply to any contracts not purporting on their face to be made by the agent for or in behalf of the principal (a question which need not now be discussed or decided), it is one thing to extend a liability to a real party in interest, and afford a remedy against him, and quite a different thing to discharge the liability expressly assumed and incurred by him who has made himself a party to the written contract. This, it is safe to say, is a result the legislature did not intend, or they would not have left a matter of such importance to be inferred merely, but would have expressed it in unmistakable terms.

We are satisfied that these provisions are not to be considered as applying to negotiable paper in such a way as to make parol evidence of the understanding and intention of the parties admissible to relieve an agent who has, on the face of the paper, expressly assumed the liability himself.

The provisions are found among those designed to regulate conveyances, by deed and contracts, respecting real estate, and those relative to the construction of statutes. The statute of 1823, c. 220, from which R. S. c. 73, § 15 was derived, is expressly limited to " deeds, bonds, contracts, and agreements purporting to be made and executed by any agent, attorney, or committee for and in behalf of any other person or corporation," and " provided it appear by said deed, bond, contract, or agreement to have been the intention of the parties to bind the principal or constituent." Clause xxi, of § 4, c. 1, R. S. of 1857, is simply one of " the rules to be observed in the construction of statutes," and originally ran thus: " When a statute requires an act to be done which may, by law, be done as well by an agent as by the principal, such requisition shall be construed to include all such acts when done by an authorized agent." R. S. of 1841, c. 1, § 3, clause xx.

We do not think that the true intent, meaning, and application of these provisions, as originally enacted, have been changed in the subsequent revisions of 1857 and 1871. Obviously they are not

designed to change the established law with regard to negotiable paper. So far as those contracts are concerned, there are special reasons for adhering strictly to the old rule first adverted to. They are well assigned in *Williams* v. *Robbins*, 16 Gray, 77, and *Barlow* v. *Cong. Soc. in Lee*, *ubi supra*.

The defendant's liability must be ascertained by an examination of the note itself.

II. As has already been suggested, the cases involving the construction of similar instruments are more difficult to reconcile than those in which the point just disposed of has been considered. Apparently slight changes in the phraseology have affected the construction adopted by different courts, and by the same court in different cases. There is a necessity for a careful examination and comparison of the numerous decisions. This we have endeavored to make, and the result is, we are satisfied that the weight of reason and authority demonstrates that this is the personal contract of the defendant and not that of the parish of which he was treasurer.

There are no appropriate words in it to show that it was the contract of the parish, or that it was made by the defendant in its behalf. He does not say that he promises as treasurer, or use any language significative of an intention to bind his successors in office as in *Barlow* v. *Cong. Soc. in Lee ;* in which case *Mann* v. *Chandler*, a *per curiam* opinion reported 9 Mass. 335, is disavowed as an authority, and it is said that "all the decisions of this court upon unsealed instruments, since the case of *Mann* v. *Chandler*, have required something more than a mere description of the general relation between the agent and the principal, in order to make them the contracts of the latter." *Vide* 8 Allen, 461, 462, 463.

In *Haverhill M. F. Ins. Co.* v. *Newhall*, 1 Allen, 130, upon a note signed, "Cheever Newhall, president of the Dorchester Avenue Railroad Company," though it was agreed that the defendant, at the time of signing the note, was the president of said company ; that it was given in consideration of a policy of insurance issued by the plaintiffs to that company, upon property owned by them, and that the defendant was duly authorized by the company to obtain

the insurance and sign the note, it was held that the form of the note only was to be looked at upon the question of charging the defendant; that he had fixed a personal liability upon himself by the use of the words, " I promise to pay," and that this liability was not affected by the descriptive addition to his signature.

In *Fiske* v. *Eldridge*, 12 Gray, 474, the note was signed, " John S. Eldridge, Trustee of Sullivan Railroad," and the defendant was held personally liable, though he proved that he was trustee of the railroad company, and as such had entire charge of its property and business, and gave the note in suit to take up a promissory note of the corporation, and delivered with it bonds of the corporation as collateral security for its payment.

The defendant's counsel relies upon certain *dicta* intimating that the case of *Mann* v. *Chandler* may be sustained, because the defendant there, as here, was treasurer of the corporation, and that the signature of that officer may be thought, of itself, to import a promise of the party whose treasurer he is.

But we should be unwilling to say that the treasurer of a religious corporation has any authority by virtue of his office to bind such corporation by the issue of negotiable promissory notes, or that the official signature of such treasurer could be considered as indicating the assertion of such authority, any more than the signature of a person describing himself as president or trustee of a business corporation asserts the requisite authority on the part of such president or trustee.

In *Mann* v. *Chandler*, relied on by the defendant, the special authority conferred by the directors upon the treasurer to give the note in suit was shown, and in the more recent cases above cited, from 12 Gray and 1 Allen, such authority was either admitted or proved without objection. But the tendency of the later decisions, manifestly, is to hold the man who says, " I promise to pay," (without stating in the writing itself that he promises for or in behalf of any other party) responsible personally. Why should it not be so ? That is the plain and direct import of the language he uses. " I " is not the language of a corporation or an association. It is that of

an individual signer. If such signer appends to his signature a description of himself as agent, president, trustee, or treasurer of a corporation, it may import a declaration on his part, that, having funds of such corporation in his possession, he is willing to be responsible, and accordingly makes himself responsible for a debt of theirs.

And this *descriptio personæ* may aid him in the keeping and adjustment of his accounts with his different principals.

But without some words in the contract importing that he promises for or in behalf of his principal, he cannot avoid the personal liability he has thus assumed.

In *Seaver* v. *Coburn*, 10 Cush. 324, the contract signed by defendant as " Treasurer of the Eagle Lodge," etc., was held binding upon him personally. And the distinction which the defendant seeks to set up, between treasurers and other officers and agents of corporations, was ignored.

The fact that it has been suggested as a possible ground upon which the case of *Mann* v. *Chandler* (so often doubted, and so recently denied to be an authority in the court which pronounced it) might be sustained, can hardly be expected to avail the defendant here.

This subject has been elaborately discussed in *Tucker Manuf. Co.* v. *Fairbanks*, 98 Mass. 101, and in *Barlow* v. *Cong. Soc. in Lee*, 8 Allen 460, and what we have already said may seem superfluous.

It is a satisfaction, however, to know that the view of the law which we take comports well with justice also. In the agreed statement of facts which the parties have appended to the case, it appears that in May, 1870, the parish mortgaged their church edifice and other property to Henry A. Neely and the defendant and other members of the parish associated with them, to secure them for liabilities assumed by them for the parish, and that in the following month, before the commencement of this suit, the equity of redemption from this mortgage was sold on execution against the parish, and purchased in by the mortgagees, so that the appropriation of the materials furnished by the plaintiffs for the building of

Sturdivant v. Hull.

the church, without compensation, would seem to be a sort of pious fraud which we should be slow to sanction so long as a legal reason for avoiding it could be found.

In the agreed statement it further appears, that there never was any vote of the parish authorizing defendant, as treasurer or otherwise, to sign any negotiable or other paper for the parish, but, that at a meeting of the parish in September, 1869, on defendant's motion, it was voted that the parish assume the payment of all liabilities thus contracted by said Neely, the defendant and others, by thus signing or indorsing any notes for the parish and that they would " save and hold harmless, from any loss or injury, all persons whatsoever, who may have or shall hereafter assume or become responsible for the payment of any debts of the parish." And on the 12th day of May, 1870, they voted to assume the payment of all notes signed by defendant as treasurer. This tardy assumption might not have availed the plaintiffs in a suit against the parish on this note ; for it seems to have been held, that, when one signs as agent in such a case, his authority at the time must be shown, and that subsequent ratification will not make it good as the act of the principal.

*Tabor* v. *Cannon*, 8 Met. 461; *Rossiter* v. *Rossiter*, 8 Wendell, 499.

But the defendant, who is mortgagee of all the church property, and co-owner of the equity of redemption, fortified by such a vote may haply find means to make it available for his protection.

*Exceptions overruled.*

*Judgment for plaintiffs.*

APPLETON, C. J.; KENT, WALTON, and DICKERSON, JJ., concurred.

*T. T. Snow,* for the plaintiffs.

*A. A. Strout,* for the defendant.