## KEOKUK FALLS IMPROVEMENT CO. *et al.* v. KINGSLAND & DOUGLAS MANUFACTURING CO., AND ED. J. BEALE.

1. COMPLAINT—*Sufficiency of on Demurrer.* A demurrer will not lie against a complaint for the reason that it fails to allege affirmatively a compliance with art. 20, ch. 18, Laws of Oklahoma, 1890.

2. JUDGMENT ON PLEADINGS—*Denied, When.* Under the practice act in force in Oklahoma prior to the adoption of the code of 1893, it was not error to overrule the motion of the defendants for judgment upon the pleadings before the plaintiffs had been ruled to reply to the allegations of new matter set up in the answer.

3. SUBROGATION—*New Party Plaintiff.* Where a number of parties are jointly sued on promissory notes, and one of the defendants files a supplemental complaint showing that he has paid in full the indebtedness sued upon, and applies to be made a party plaintiff against his co-defendants in the original action, it is not error for the trial court to order the party, upon such showing, to be subrogated to all the rights of the original payee in the notes.

4. NEW PARTY PLAINTIFF. Where the cause of action is not changed and all parties thereto submit themselves to the jurisdiction of the court and no showing is made for a continuance, it is not error for the trial court, after the jury has been empanelled, to make, upon a proper application, one of the number of co-defendants the plaintiff in the action, and to direct the trial to proceed to a final determination.

5. ANSWER—*Plea of Extension of Time of Payment, Motion to Strike Out.* Where a paragraph in an answer does not in specific terms allege that the time of payment in a promissory note was by payee extended for a valuable consideration, no error is committed in sustaining a motion to strike out such paragraph.

6. VERDICT—*When the Court Should Direct.* The right of a trial court to direct the verdict of a jury is undoubted where the only questions to be determined are matters of law arising during the trial of the cause, and in a suit on promissory notes, where the ownership of the same is undenied, it is the duty of a trial court to instruct the jury that the owner of the notes was entitled to all the rights of the payee named therein.

7. PROMISSORY NOTE—*Agency.* Where a person acting in a private capacity as an agent in signing a promissory note fails to disclose his agency, but where he describes himself merely as a director or trustee or agent for the person or corporation for whom he is signing and there is nothing in the body of the note showing that it is the obligation of his principal, he is personally bound upon the instrument; and where a suit is brought against him individually, he will not be permitted to avoid his liability by parol proof showing that he signed the note in his agency capacity.

8. SAME—*Parol Evidence.* Where upon the face of a note such an ambiguity exists as makes it impossible for the court to say what the contract does express, parol evidence may be admitted to explain the contract, but not to modify or change it so that the maker may avoid his liability.

9. CHATTEL MORTGAGE—*Attorney Fee.* Where by the terms of a chattel mortgage it is impossible to determine with certainty whether the ten per cent. named therein as a reasonable attorneys fee in case of foreclosure, wast to be computed upon the proceeds of the sale of the mortgaged property, or upon the amount of money secured by the mortgage, the attorney fee should be computed upon that sum which will be most favorable to the debtor.

*Error from the district court of Oklahoma County.*

*Field & Shear,* for plaintiff in error.

*H. B. Mitchell* and *Selwyn Douglas,* for defendants in error.

The opinion of the court was delivered by

DALE, C. J.: This was a suit instituted in the district court of Oklahoma county on October 14, 1892, by the Kingsland & Douglas Manufacturing Co., to recover judgment upon three promissory notes against the Keokuk Falls Improvement Co., *et al,* in the sum of $1,795.50 and interest. The record in this case shows that October 31, 1891, the Keokuk Falls Improvement Co., executed to the Kingsland & Douglas Manufacturing Co., a corporation under and existing by virtue of the laws of Missouri, three promissory notes, in the sum of $700 each, which notes were, on their face, executed by A. G. Crum, Keokuk Falls Improvement Co.; Perry Rodkey, secretary, and A. B. Hammer, president, and were endorsed upon the back by A. B. Hammer, Perry Rodkey, C. P. Walker, H. C. Jones, O. A. Mitscher and Ed J. Beale. The complaint alleged, in substance, that on October 31, 1891, the Keokuk Falls Improvement

3—v.

Co., being indebted to the plaintiff on account of certain machinery, goods and merchandise, in the sum of $2,100, did on that day make, execute and deliver, together with the other co-defendants, the promissory notes above described, and to secure the payment thereof the Keokuk Falls Improvement Co., executed a chattel mortgage on certain machinery, chattels and goods belonging to such company. Copies of the notes and mortgage are attached to and made a part of the petition. The mortgage is in the usual form of a chattel mortgage, providing for sale of the property in case any of the notes are not paid at maturity, and in such case that the entire sum shall become due and payable, and further providing that in case of foreclosure, in addition to the other costs, a reasonable attorneys' fee of ten per cent for attending to the foreclosure thereof is to be paid with the other expenses out of the proceeds of the sale.

The property mortgaged consisted of a stationary engine and saw mill machinery. The notes were dated October 31, 1891, and except as to the time at which they were made payable were identical. The note which first became due is as follows:

"$700.00.          OKLAHOMA, OK. TY., Oct. 31, 1891.

On the 1st day of March, 1892, for value received, we promise to pay to the order of Kingsland & Douglas Manufacturing Co., ($700.00) seven hundred and no one-hundredths dollars, at the First National Bank, Oklahoma City, O. T., with interest from date until paid at the rate of 8 per cent per annum, and exchange on St. Louis.

(Signed)      KEOKUK FALLS IMPROVEMENT CO.,
              A. G. CRUM,
              PERRY RODKEY,
              A. B. HAMMER."

And on the back of said note appears the following:

"For value received we guarantee payment of the within note, waiving demand, notice and protest.

A. B. HAMMER,

PERRY RODKEY,

C. P. WALKER,

H. C. JONES.

O. A. MITSCHER,

As directors Keokuk Falls Improvement Co.

A. B. HAMMER,

PERRY RODKEY,

ED J. BEALE."

The second note fell due July 1, 1892, and the third note October 1, 1892. Each note was protested for non-payment, and all of the makers and endorsers were duly notified by mail of the non-payment thereof.

The complaint further avers that on September 9, 1892, two of the notes became due and default having been made in the payment thereof, the plaintiffs declared the whole of the sum due upon the three notes, and in accordance with the terms of the chattel mortgage, gave the notice required by law of the foreclosure of the same, and upon the day and at the place named in such notice, offered for sale at public outcry, to the highest and best bidder for cash, the property described in the mortgage. That $300 was realized from the sale of such property; that the costs of such foreclosure amounted to $213.50 which plaintiff paid, and the balance $86.50 was duly credited upon the note first falling due. That the sum of $220 had been paid by the defendants before foreclosure. Proceedings were instituted and the amount so paid, together with the sum realized from the sale under the chattel mortgage reduced the original indebtedness of $2,100 to $1,793.50, the amount claimed, with interest at eight per cent per annum. The defendants, Keokuk Falls Improvement Co., Perry Rodkey, C. P. Walker, O. A.

Mitscher and A. B. Hammer, each filed a separate demurrer to the petition alleging therein that the complaint failed to state a cause of action against the several defendants. The demurrers were overruled and an exception taken, and afterwards defendants above named answered, denying all the allegations in plaintiff's complaint and avering further that the indebtedness sued upon had long since been fully paid and satisfied. To defendant's answer plaintiff filed a general denial. Afterwards the defendants filed an amended answer, setting up in addition to the defense in their former answer "that on or about November 22, 1895, the defendant, Ed J. Beale, delivered to the plaintiff his three promissory notes for $1,872, which were by plaintiff accepted in full satisfaction and discharge of the claim and demand sued upon." This last answer was filed March 28, 1894, and on the 30th of the same month defendants filed their motion for a judgment in their favor upon the pleadings, which motion was on the same date overruled, the defendants excepting. A jury was then duly empanelled and sworn, whereupon Ed J. Beale, one of the defendants filed, what is termed, a supplemental complaint, which is as follows, omitting the title:

"Comes now the above named defendant, Ed. J. Beale, and represents to the court that heretofore and since the filing of the plaintiff's complaint, and while the same was pending, he has, in pursuance of his contract of guaranty and endorsement on the notes sued on in this case and after maturity of said notes, paid the same in full and settled with said company, and he now comes before the court and asks the court for judgment over against said other defendants by reason of said payment to said company of said debt of defendants on which he was the endorser."

Then followed the prayer for judgment in accordance

with such complaint. Upon this showing the court or-- dered that Beale be subrogated to the rights of the plaintiff, the Kingsland & Douglas Manufacturing Co., and that the action proceed in his name, to which order of the court an exception was saved. The defendant, Keokuk Falls Improvement Co., filed a general denial to the supplemental complaint of Beale, while the defend- ants, Rodkey, Hammer, Walker and Mitscher, in a sep- arate answer to such complaint, in addition to a general denial, alleged, in the second paragraph of such answer:

"That on or about the 3rd day of May, 1892, and again, on or about the 15th day of July, 1892, the Kingsland & Douglas Manufacturing Co. agreed with the Keokuk Falls Improvement Co. and A. G. Crum, in the complaint mentioned, for a valuable consideration, to extend the time of payment of the notes in question sixty days from each of said dates, and that the de- fendants, other than the Keokuk Fall Improvement Co., and A. G. Crum, had no knowledge of such extension, and did not then or have they since assented thereto."

To the answer of the defendants, Rodkey, Hammer, Walker and Mitscher, as contained in the second para- graph thereof, Beale filed a motion asking that the same be stricken from the answer, which motion was allowed, the defendants excepting. The case then proceeded to trial, and upon the issues so joined a verdict was re- turned in the sum of $2,207 in favor of Beale, such being the full amount of the unpaid sums due on the notes, together with interest thereon.

Various pleadings in the case and rulings of the trial court in the formation of the issues are set forth at some length and detail, as some of the assignments of error make such setting out necessary if the decision of this court is to be well understood.

An examination of the record of the evidence discloses

that at the time the Kingsland & Douglas Manufactur-
ing Co. sold the property for which the notes in the
sum of $2,100 were given, Ed. J. Beale was acting as
the agent in the sale of machinery for such company,
and that he made the sale of such property as agent, to
the Keokuk Falls Improvement Co. The order for such
machinery was given by A. G. Crum. The order as
made, was not accepted by the Kingsland & Douglas
Manufacturing Co., and it was agreed by A. B. Hammer,
president of the Keokuk Falls Improvement Co., that
the directors and some of the stockholders would endorse
for the company. Beale, under an arrangement with his
company, also endorsed the notes, his endorsement being
made about a month later, and they were then turned
over to the Kingsland & Douglas Manufacturing Co.
After the notes became due and suit to enforce collection
thereof was instituted, Beale paid the same by giving to
the Kingsland & Douglas Manufacturing Co. his individ-
ual notes in lieu of the others. Beale, neither at the
time of the giving of the notes, nor at the time the suit
was tried in the court below, had any interest whatever in
the Keokuk Falls Improvement Co.

September 10, 1892, the chattel mortgage was fore-
closed by public sale, after due notice, as required by
law. The sale was in all respects fairly conducted, some
of the defendants being present at the time thereof. The
mortgaged property brought $300. There were charged
as expenses, incurred in the foreclosure proceedings, the
sum of $213.50, $210 of which was charged as attorneys'
fee. It appears by a strong preponderance of the evi-
dence that the parties who signed their names inside of
the brackets did so believing that they were signing as
directors of the company, and that they thereby incurred

no individual liability, and it also affirmatively appears that Beale knew of this fact. After the first note became due, and until the foreclosure of the chattel mortgage, there were conversations between Kingsland, a member of the corporation styled Kingslands & Douglas Manufacturing Co., and some of the members of the Keokuk Falls Improvement Co., looking toward a private sale of the mortgaged property, and an application of the proceeds to the liquidation in part of the debt; but no definite arrangement was made and such negotiations were carried on by the Kingsland & Douglas Manufacturing Co. as a friendly act by a debtor towards a creditor. By the record numerous questions are raised and argued in the brief of appellants relative to objection to the rulings of the trial court in joining the issues, which, summarized, are as follows:

1. Error in overruling the demurrer of the defendants, and error in overruling the demurrer of Mitscher and Walker.

2. In not sustaining the motion of the defendants for judgment on the pleadings.

3. In granting permission to Ed J. Beale to file a supplemental complaint.

4. In striking out the second paragraph of a part of the defendants' answer to the supplemental complaint of Beale.

Exceptions were also duly saved to the several instructions of the court, and to the refusal of the court to give instructions asked for by appellants. And it is insisted by the appellants that there were properly joined as issues in the case matters which were not permitted by the court to go to the jury as follows:

1. Were the notes executed by the Keokuk Falls Improvement Co., and did the board of directors sign the

guaranty upon the back of said notes as a part of the process of the execution of said notes, or did they sign personally?

2. Were the notes in question paid to the plaintiff by one of the defendants, either in money or by other securities during the pendency of said action?

3. Was the property included in the chattel mortgage securing said notes delivered to the plaintiff Kingsland & Douglass Manufacturing Co. without any formal foreclosure and upon the agreement that the defendants were to have credit for its value?

4. Was the property in question sold in violation of such an agreement and sold unfairly?

I. Taking up the several questions arising upon the pleadings in the order set forth, we will first consider the demurrer to the petition. Appellants contend that under the provision of art. 20, ch. 18, laws of Oklahoma, 1890, the plaintiff was incapacitated to sue for the reason that it had failed to file in the office of the secretary of the territory a duly authenticated copy of its charter or articles of incorporation, and had failed to appoint an agent as required by such law, and that the complaint failed to affirmatively show a compliance with the law as contained in the article and chapter above stated. Without passing upon any question other than that raised by the demurrer, we have this to say: Article 20, ch. 18, *supra*, was adopted by our legislature from the Dakota Code, and at the time it was so adopted had received a construction in a case precisely similar to the one we are here considering, in so far as relates to the demurrer. In *American Pittinghill and O. S. S. M. Co. v. Moore et al.* 2 Dak. 281, decided in 1880, the court held that a demurrer would not lie against a petition for the reason

that the petition failed to allege affirmatively a compliance with art. 20, ch. 18, *supra*. The first section of the syllabus of the case referred to reads as follows:

"The foreign corporation plaintiff need not allege in its complaint that such corporation has filed a copy of its articles of incorporation and appointment of an agent upon whom service of process may be had in the office of the secretary of the territory, and upon demurrer to a complaint without such allegation, held sufficient."

The opinion sustains the syllabus, and we therefore conclude that no error was committed by the trial court in overruling the demurrer, and in as much as the same objection is alleged to the sufficiency of the petition by the separate demurrers of the defendants Mitscher and Walker, the ruling of the court below for the reasons above stated was correct.

II. It is claimed that the court below committed error in not sustaining the motion of the several defendants for judgment upon the pleadings. The answer at that time was a general denial and a plea of payment and of accord and satisfaction. This answer was filed March 28, 1894, and two days thereafter the defendants filed their motion for judgment. This case was begun and tried under the code of 1890, and under such code before the court could properly have rendered the judgment desired, the movers for such judgment must have had plaintiff ruled to reply to the answer. Until the court had so ruled the judgment could not properly have been entered.

III. The next objection brings up the question in volved in permitting the co-defendant, Ed J. Beale, to file a supplementary complaint, as the instrument was styled in the court below. After a jury was empanelled in the cause originally instituted, the defendant, Ed J.

Beale, over the objection of his co-defendants, was sub-rogated to all the rights of the plaintiff, upon filing his complaint, alleging that he had paid in full all demands of the plaintiff.   We do not question the right of a party who is an endorser, guarantor or surety, on a note, to set-tle with the holder thereof, and to be then subrogated to all the rights of such holder against all who incurred the obligation in payment of which the note was given. This principle is as old as the law itself, is founded in natural justice, and does not depend for its application upon the statute which may be invoked by any person who, upon a contract for the payment of money, has been compelled to pay the debt of another.   It is a substitution of a new for an old creditor.   A party being jointly liable on an instrument, may settle with the creditors and pay the obligation, and he is thereby substituted as a creditor to the full extent of the party to whom the obligation was originally given, less his proportionate share of the obli-gation.   Subrogation is an equitable and not a legal right.   (24 Am. & Eng. Enc. 191, and cases therein cited.)

IV.  Whether or not the court below erred in permit-ting the co-defendant, Ed J. Beale, to be substituted as the plaintiff at the time such substitution was asked, would depend entirely upon the ability of the appellants to show that such action of the court worked injustice to them.   Under the uncontradicted evidence in the case, it appears that Beale was not one of the parties who was primarily liable upon the note.   The notes were executed by the co-defendants of Beale and he did not become obligated thereon until long after the notes were so executed and placed in his hands as the agent of the Kingsland & Douglas Manufacturing Co.   Under an arrangement with such company, whereby Beale agreed

to endorse all notes accepted by him in the sale of goods, Beale endorsed the notes in question, and after the same because due and were protested for non-payment, Beale satisfied them in full, and this fact was, as appears by the pleadings and evidence, well known to all of the defendants before the case was called for trial. The substitution of Beale as plaintiff was therefore no surprise; it did not change the cause of action. Defendants made no showing for a continuance; they submitted themselves to the jurisdiction of the court by filing an answer and proceeding to trial, and as the right of subrogation is unquestioned, we cannot observe wherein the court erred in the premises.

V. Upon the action of the court in striking out the second count of the defendant's answer to the supplemental complaint of Beale, error is attributed. By this paragraph of the answer it was sought to show that on or about May 3, 1892, and July 15, 1892, the Kingsland & Douglass Manufacturing Co. agreed with the Keokuk Falls Improvement Co. and A. G. Crum to extend the time of the payment of the notes in question sixty days from each of said dates, and that the defendants, other than the Keokuk Falls Improvement Co. and said Crum, had no knowledge of such extension, and did not then or since assent thereto. This paragraph was upon motion of Beale stricken out. It will be observed that the paragraph in question does not allege in positive terms an extension of time, but only an agreement to that effect. It may be stated, as a general rule, that where the owner of a note, for a consideration, grants to the maker thereof an extension of time, without the assent of a guarantor, such extension relieves the guarantor, as the extension of time creates a new contract to

which the guarantor is not a party.   (2 Daniel, 1789.)
But the allegation stricken out neither alleged an exten-
sion of the time of payment or the receipt of a valuable
consideration therefor.   If such fact existed, it should
have been pleaded in precise language; but notwith-
standing the court struck out such paragraph, the wit-
nesses were permitted to testify fully upon the sub-
ject without objection, and it appears from the evidence
of the defendants themselves, that at their instance en-
tirely, and without any consideration whatever, Kings-
land, one of the members of the corporation of the
Kingsland & Douglas Manufacturing Co., was induced
to withhold suit for a time under the promise of some of
the defendants that a settlement of the indebtedness
would be made in the near future.   Kingsland could use
his own pleasure in doing this, as the notes had been
legally protested for non-payment, and this action on the
part of Kingsland operated to release none of the guar-
antors.

VI. By the action of the trial court, in its instruc-
tions to the jury, all questions of fact were taken there-
from, and the jury were directed to return a verdict for
plaintiff, Beale, in the full sum of the notes, less the sum
of $220 paid in cash, and $86.50, the amount, after de-
ducting expenses, received on the sale of the mortgaged
property.   They were also instructed that the defendants
were liable on the notes in their individual capacity.   To
these instructions appellants excepted, and insisted that
there were certain questions of fact properly joined
under the pleadings and the evidence in the case.   The
right of a court to direct the verdict of a jury is undis-
puted where the questions to be determined are matters
of law arising upon the trial of a cause.   And whether or

not a trial court errs in directing the verdict must depend upon the issues as joined in the pleadings, and the evidence offered in support thereof. Under the pleadings the only issue on trial was upon the complaint of Beale, alleging a payment of the indebtedness, and a general denial by defendants of said allegation. The evidence as to Beale's payment of the notes to the Kingsland & Douglas Manufacturing Co. is undenied. The court was therefore right in instructing the jury to the effect that Beale was the owner of the notes sued upon and entitled to all the rights of the payees named therein.

VII. The court below instructed the jury that, under the issues joined by the pleadings, no question was before them as to the liability of the defendants in their individual capacity. This action of the trial court was based upon one of two theories, either that the general denial raised no issue except as to the ownership of the notes and the signature of the defendants thereon, or that the law held such defendants individually liable, irrespective of the intention of the parties affixing their signatures to the notes. Under the code of Indiana all pleadings are verified, and the general denial by the defendants put into issue not only the question of the ownership of the notes, but the execution thereof as claimed by the plaintiff below. Beale was asking a judgment against all of the defendants in their individual capacity, and if Beale had been an innocent purchaser for value prior to maturity, he would have been entitled to such a judgment as the law would fix as the liability of the defendants. But Beale not only purchased after maturity, but with a full knowledge of the intention of the parties executing the notes, and under such circum-

stances subject to all proper defenses. The defendants, Walker, Jones and Mitscher, claimed to have endorsed in their capacity as directors of the Keokuk Falls Improvement Co. Under the rulings of the court this endorsement was held to bind them in their individual capacity, and this ruling of the court presents two questions: (1) Whether the defendants' liability must be determined solely by the written instruments which they have subscribed, excluding the evidence offered to control this construction, and, (2), if so, does the true construction of such written instruments make them individually liable upon the notes? Ample authority may be found in support of or against allowing parol proof to show the agency of the parties in signing promissory notes. It is not our purpose to deal with such authorities only to the extent of aiding us in reaching a correct conclusion in the case under consideration:

In *Tucker Mfg. Co. v. Fairbanks*, 98 Mass. 101, in discussing the question of the admissibility of parol proof in a case where the maker sought to show that he was acting merely as the agent, Mr. Justice Gray said: "It is equally clear that the liability of defendants as drawers of a negotiable instrument must be determined from the instrument itself. This is too well settled to admit of discussion. There is no distinction in this respect between the drawer of a bill of exchange and the maker of a promissory note." Citing numerous authorities.

In *Sturdivant v. Hull*, 59 Me. 172, 8 Am. Rep. 409, a cause arose wherein the maker of a promissory note who had signed the same as follows: "John T. Hull, Treas. St. Paul's Parish," sought to show that he was acting merely as treasurer of St. Paul's parish in signing

the instrument. The suit was between the original parties to the note. In discussing the right of the maker of the note to introduce parol evidence to show the intention of both parties at the time the note was executed, the court said;

"1. Now when parties are competent witnesses, and stand ready to testify (if allowed) not only to their own intentions, but to those of the other party to the contract, the wisdom of the long established rule, which requires all parties to written contracts, at their peril, to state what they mean to abide by in the writing itself, and prohibits them from resorting to oral testimony to contradict or vary its terms, grows more apparent every day.

"One of the illustrations of this rule, given by Mr. Greenleaf in his Treatise on Evidence, volume 1, page 320, edition of 1842, (citing *Stackpole v. Arnold,* 11 Mass. 27) runs thus: 'Where one signed a promissory note in his own name, parol evidence was held inadmissible to show that he signed it as the agent of another, on whose property he had caused insurance to be effected by the plaintiff, at the owner's request.'

"When a man has deliberately said, in writing, 'I promise to pay,' and a valid consideration for the promise is shown, right and justice are not very likely to be the gainers by allowing him to retract and undertake to prove that he did not actually mean 'I promise' but that he meant, and the other party understood that he meant, that some third party, whose promise the writing does not purport to be, undertook the payment.

"It is better that a careless or ignorant agent should sometimes pay for his principal, than to subject the construction of valid written contracts to the manifold perversions, misapprehensions, and uncertainties of oral testimony.

" And upon this point the decisions (although, in cases of like type with this, they are somewhat conflicting, or, at least, distinguished with scarcely a shade of difference.

upon the question of the instrument itself,) will be found concurring." Citing a number of authorities.

Again, in *Randall v. Harriman*, 75 Me. 497, the court had occasion to deal with the same question. A note reciting "we promise to pay," etc., was signed by four individuals, adding, "president and directors of the Prospect & Stockton Cheese Co." The court held inadmissible evidence offered to show that the note was the obligation of the company and in discussing the question, the court, in support of its conclusion states that the same rule obtains at common law, and that the evidence, if admitted, would not avoid the defendants' liability, unless it had the effect to discharge them from a contract into which they have entered. In the same case, however, the court further states:

"When there is ambiguity in the contract, when the language used is equally susceptible of two different constructions, evidence of the circumstances by which the parties were surrounded and under which the contract was made may be given, not for the purpose of proving the intention of the parties independent of the writing, but that the intention may be more intelligently ascertained from its terms."

*Mellen v. Moore*, 68 Me. 390, 28 Am. Rep. 77, is to the same effect.

New York seems to have followed the same rule as laid down in Massachusetts and Maine. (*Pentz v. Stanton*, 10 Wend. 271). *Powers v. Briggs*, 79 Ill, 493, is a case where a note contained in its body the words "We, the trustees of the Seventh Presbyterian church, promise to pay," etc., and was signed by four individuals with the word trustees following their names. Parol evidence was admitted by the trial court showing that at the time the note was given the parties signing the same were the

trustees of the church and that the note was given for the benefit of such church. The supreme court held that evidence was not admissible, basing their decision upon the ground that the notes upon their face created an individual liability against the makers.

We believe the rule announced in the cases above cited has been generally adopted by the older states of the Union when applied to individuals who make notes for private persons or corporations; but it is different where the individual acts for a public corporation or as the official acting on behalf of some government department, and an examination of the authorities will show that where the officers of a school district, or any public agent, sign notes and use any language indicative of their official character, parol proof is admissible to establish such fact. (*Sanborn v. Neal*, 5 Minn. 106; *Bingham v. Stuart*, 13 Minn. 106; *School-town of Monticello v. Kendall*, 72 Ind. 91; Story on Agency, S. 302; Daniel on Neg. Ins., S. 445.)

But even this rule is not uniform. (*Cahokio School Trustees v. Rautenberg*, 88 Ill. 219.)

Where a suit is brought on a promissory note against an undisclosed principal, it is held by most modern authorities that parol proof is admissible to show that a party signing the note acted in an agency capacity. (*Briggs v. Partridge*, 64 N. Y. and cases therein cited.)

After an examination of the authorities we conclude:

First. That where a person acting in a private capacity in signing a promissory note fails to disclose his agency, or where he describes himself merely as director or trustee, or agent for the person or corporation for whom he is signing, and there is nothing in the body of the note showing that it is an obligation of his principal,

he is personally bound upon the instrument, and in such case the owner may bring suit against him individually and he will not be permitted to avoid his responsibility by parol proof showing that he signed the note in his agency capacity.

Second. Where upon the face of the note such an ambiguity exists as to make it impossible for the court to say what the contract does express, parol evidence may be admitted to explain the contract, but not to modify or change it so that the maker may avoid his liability.

We think these rules are supported by the better and weighter authorities in this country, and that they are in harmony with the common law.

Applying these principles to the case under consideration we find that there is nothing in the body of the notes implying that they were given for the Keokuk Falls Improvement Co. In the face of the note there appear the words "we promise to pay," which is a joint and several obligation upon the part of the makers, and the words, "secretary" and "president," which follow the names of Rodkey and Hammer respectively, in no manner relieve them of a personal liability. Upon the back of the notes we find this language: "For value received, we guarantee payment of the within notes, waiving demand, notice and protest." Then follows the names of the several guarantors. Do the words, "as directors Keokuk Falls Improvement Co.," relieve from individual liability? It does not affirmatively appear, either upon the face or back of the notes, that the debt was an obligation of the Keokuk Falls Improvement Co., and by the terms of the guaranty the parties are severally liable. Their guaranty and signature upon the back of the

instrument in their capacity as directors adds nothing to the value of the notes, because the corporation was bound to the full extent of its assets by its name upon the face of the instruments as one of the makers of the notes. There is not that in the words "as directors Keokuk Falls Improvement Co.," which shows that the parties so signing were doing so for the corporation and as the act of the corporation. Especially is this true when we consider such words with the language of the guaranty wherein they say that "we guarantee payment," etc. By the use of the word "we" they negative the idea that their intention was only to bind "it," the corporation; and taking all the language used together it is, we think, clear that the words "as directors Keokuk Falls Improvement Co.," should be construed in a descriptive sense rather than as limiting their liability. This conclusion is supported by much authority.

"One who puts his name on negotiable paper will be liable personally although he acts as agent, unless he says so, and also who his principal is; that is unless he uses some expression equivalent, to use Lord Ellenborough's language, to "I am the mere scribe," for if the construction may fairly be that while he acts officially or at the request of others, yet what he does is still his own act, and it will be so interpreted." (First Parsons on Notes and Bills, p. 95).

In *Tucker Mfg. Co. v. Fairbanks, supra,* this language is used:

"In order to exempt the agent from liability upon an instrument executed by him within the scope of his agency, he must not only name his principal, but he must express by some force of words that the contract is the act of his principal though done by the hand of the agent. A mere description of the general relation or office which the person signing the paper holds to another person or corporation, without indicating that

the particular signature is made in the execution of the office and agency, is not sufficient to charge the principal or exempt the agent from personal liability."

To the same effect are the following cases: *Hobson v. Fassett.* 76 Cal. 203; *Sturdivant v. Hull*; *Pentz v. Stanton*; *Powers v. Briggs; Cahokio School Trustees v. Rantenberg; Mellen v. Moore, supra.*

If the names of the parties signing as guarantors appeared upon the face of the notes, followed by the words, as directors Keokuk Falls Improvement Co., and the body of such notes indicated that they were given for a debt or obligation of the corporation, then we should hold that the word "as" should be treated in the sense of limiting the liability of the signers, and the authorities, cited by counsel for appellant would be in point. But we have no such question before us, and holding to the view that parol testimony was inadmissible and that the contract of guaranty upon its face created an individual liability, we perceive no error in the action of the court below in so instructing the jury.

VIII. The court instructed the jury, in effect, that the extent of liability was the face of the three notes, $2,100, with interest as expressed therein, less payments of $220 and $87.50, and the jury returned a verdict accordingly. The appellants claim that the court misdirected the jury, because the instructions given allowed the sum of $210 as attorneys' fee in the foreclosure of the mortgage, whereas only $30 should have been allowed for such service. As against this alleged excessive amount allowed as attorneys' fees the defendants would have the same right to defend as if Beale had not been subrogated to the rights of the original payee. The mortgage was a part of the petition, its foreclosure in accordance with law was a matter for the court to pass upon.

The expenses which the plaintiff, Kingsland & Douglas Manufacturing company, might reserve from the proceeds of the sale, in so far as it related to the attorneys' fee, was also a question which the court must determine from the instrument itself. . Whether or not the attorney foreclosing the mortgage would have a right to charge ten per cent upon the whole sum secured by the mortgage or the amount due thereon, or the amount actually collected through the foreclosure proceedings, depends upon the construction given to the statute in force at the time of the execution of the mortgage. The clause in the mortgage which provides for an attorney's fee reads as follows:

"And said parties of the first part hereby agree that they will, in addition to the other costs and expenses attending said sale, pay a reasonable attorney's fee of ten per cent. for attending to the foreclosure hereof, to be paid with the other expenses out of the proceeds of said sale, and the balance of the proceeds of such sale, after paying all that remains unpaid upon said note, and interest and all costs and expenses attending such sale, and said reasonable attorney's fee, shall be paid to said parties of the first part, or their legal representatives."

This clause must be construed with reference to the statute of the territory in force at the time of the giving of the mortgage, which is as follows: Section 32, ch. 54, Laws 1890.

"Such attorney fee as shall be specified in the mortgage may be taxed and made a part of the costs of foreclosure, provided, such mortgage is foreclosed by an attorney of record in this territory, and the name of such attorney appears as attorney in the notice of sale. In no other cases shall an attorney fee be allowed."

This section appears to make the attorney's fee a part of the costs of the foreclosure which the mortgagor

agrees may be taxed as costs in case a foreclosure is had, and if the mortgage fixes a sum certain which it is agreed should be taxed as costs under the statute referred to, then such sum governs, provided the contract was not unconscionable. But in the mortgage under consideration we do not find that any certain sum was agreed to as to the amount which might be so taxed as costs. The reasonable attorney's fee of ten per cent. referred to in the mortgage may as well apply to the sum recovered in the foreclosure proceedings as to the entire indebtedness secured in the mortgage. The notes secured by the mortgage are silent upon the question. As the right to collect an attorney's fee depends entirely upon the statute, parties seeking its benefits must bring themselves within its terms. The statute says "such attorney fee as shall be specified in the mortgage." This mortgage fails to specify any attorney's fee other than the reasonable one of ten per cent. "to be paid with the other expenses out of the proceeds of said sale." Under the terms of the mortgage, the agreement was to pay ten per cent. out of the proceeds of the sale; at least we do not find that there was any agreement to pay ten per cent. upon the sum secured regardless of the amount of the proceeds.

We think the trial court was not justified in placing a construction upon the terms of the mortgage which would bear most severely upon the mortgagors. To the extent, therefore, of the difference between $30, ten per cent. of the proceeds of the sale under the foreclosure proceedings, and $210, the sum allowed by the court, we think the court below erred.

As to the several issues which counsel for appellants, in their briefs, insist should have been submitted to the jury, we do not find any authority therefor in the

pleadings in this case. If counsel had desired to join issue upon the questions, as suggested in his brief, it was their duty to have set forth in their pleadings such defense as they thought they were entitled to present to the jury, or, if in the trial of the case it was found that the facts would justify the amendment of the pleadings to conform to the issues as developed by the testimony, it was the duty of counsel to request of the court an opportunity to so amend the pleadings as to present such new questions. The only matter before the court upon the issues as joined in the pleadings was the purchase by the co-defendant, Beale, of the notes in question, the extension thereof, the amount due thereon, and his right to be subrogated to that of the original plaintiff in the action, and the liability of defendants as individuals. The general denial of the defendants only went to those questions. The undisputed evidence in this case shows that Beale was an endorser of the notes in question, that his co-defendants were primarily liable for the entire indebtedness; that he purchased same from the Kingsland & Douglass Manufacturing Co. by giving his own notes, secured by mortgages therefor; that he paid all that there was due upon the notes at the time of his purchase; that he should have been, under the law subrogated to the rights of the plaintiff, and that he was entitled to a judgment against the defendants for the full sum of the notes, less the amount which had been actually paid thereon. Upon these questions there was no dispute in the testimony. There was nothing in the evidence which would warrant the court in submitting to the jury questions to pass upon. The amount due upon the notes was a mere matter of computation. The only question which might be said to be in dispute was a question which arose upon the construction of the clause in the mortgage

providing for an attorney's fee.    Under the law it was the duty of the court to say what that clause meant. Holding to these views, it is unnecessary for us to discuss the other questions raised by assignment of errors in the briefs of appellants.    The judgment which should have been rendered in this case is erroneous to the the extent of $180, and in that sum was excessive.    The cause is remanded and the court below is directed to modify the judgment heretofore rendered in accordance with the opinion of this court.

Scott,J., having presided at the trial in the case below, not sitting; all the other Justices concurring.