## Bender, to use of Mueller, *versus* George.

A. gave B. a lease for a term of years. C. and D. were B.'s sureties. B. assigned the lease to E., who assigned it to F., for whom H. became security as bail absolute for payment of the rent and performance of the covenants of the lease. F. defaulted for the rent and D. was compelled to pay the same to A. He then brought an action in the name of A., for the use of D., against H. *Held*, reversing the court below, that he could recover.

November 4th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1879, No. 265.

Debt by Andrew Bender, for use of John M. Mueller, against Michael George.

The facts were these: Andrew Bender, being the owner of the premises No. 242 Pride street, in the city of Pittsburgh, let the same on June 27th 1872, for the term of four years and eight months from August 1st 1872, to G. Tochterman, at $1200 per annum. Krehan, an alderman, who was concerned with Bender in the negotiation of the lease, subsequently received the rent for Bender, and otherwise acted as his agent. A firm doing business as Meyer & Co., and John M. Mueller, the equitable plaintiff, became sureties on this lease. On August 23d 1873, Tochterman, the lessee, assigned his interest to C. A. Campbell, and on the 27th September 1873, Campbell assigned to John Anderson. Prior to the assignment to Anderson, the rent had fallen behind, and A. S. Bright, a co-partner in the firm of Meyer & Co., had obtained possession of the property and controlled it for the protection of the sureties. He procured the assignment of the lease to Anderson, and as part of the transaction, stipulated with Anderson for security for the payment of the rent. Anderson tendered his father-in-law, the defendant, Michael George, and Bright met Anderson at Krehan's office to consummate the arrangement. The blank form of the covenant of suretyship usually found on the back of leases in use in Allegheny county was cut off by Krehan, and filled up as follows:

" For a valuable consideration as well as in consideration of the letting of the premises No. 242 Pride street unto John Anderson, I hereby become security, as bail absolute, for the payment of rent, and performance of the covenants in the foregoing agreement mentioned by the said party of the second part, to be paid, kept, done and performed. And in the event that any default shall be made therein, I hereby covenant and agree to pay unto the said party of the first part such sum or sums of money as will be sufficient to make up any deficiency, and fully satisfy the conditions of

[Bender *v.* George.]

the said agreement, without requiring any notice of non-payment or proof of demand being made.

" Witness my hand and seal this first day of October 1873.

"MICHAEL GEORGE." [SEAL.]

This document was taken by Anderson to George, and returned with the latter's signature to Bright; who afterwards gave it to Mueller. George was examined as to it in another proceeding, and swore that he had signed it for " the house, Bender's house, No. 242 Pride street," and that when he signed it " he understood he was going bail for Anderson for the rent of the house." There was also an offer by plaintiff, which was rejected by the court below (fourth assignment of error), to prove that when Anderson had defaulted in the payment of his rent, and Mueller had been sued for it by Bender, the landlord, Mueller, went to George with the latter's agreement, told him that Anderson's rent was in arrear, and demanded the payment of it; and that George excused himself from the compliance on the ground that he had to meet a mortgage on his property, and was therefore without funds. Bender recognised Anderson as his tenant, and on one occasion allowed him a reduction of his rent.

Mueller was compelled to pay to Bender $1033.65 of Anderson's rent, and the present suit was brought in the name of Bender as the legal plaintiff, treating the engagements of George as having been made to him. Various offers were made of the agreement signed by George, all of which were excluded by the court below. The court granted a compulsory nonsuit, regarding the action as not well brought in the name of Bender as the legal plaintiff, because George's contract, if any, was (in the court's opinion) with the sureties.

A motion was made to set aside the nonsuit, and after argument the court, Bailey, J., in an opinion said: " It is quite apparent, from the inability of plaintiff to show that Bender ever saw the paper signed by George, that the persons with whom George contracted, if with any one, were Mueller and his co-securities. If the principle underlying Kramer & Rahm's Appeal, 1 Wright 71, and kindred cases, is, as seems reasonable, that it would be inequitable, under the guise of protection to a surety, to divert assets of a debtor from the reach of a creditor, whom both debtor and surety were bound to secure, such cases can have no application here. See Homer *v.* Savings Bank, 7 Conn. 484. To so apply them would be to confound the attitude of the parties, and to convert the equitable claim of Bender to have recourse to George into a legal right, merely in order to suspend therefrom an equitable right in Mueller, who was a party to the contract sued upon. The motion to set aside the nonsuit is refused."

The plaintiff then took this writ and, inter alia, alleged that the

[Bender *v.* George.]

court erred in refusing to admit in evidence the deed of George, and in rejecting the offer alluded to in the fourth assignment of error above.

*John H. Mueller* and *J. M. Stoner*, for plaintiff in error.— Sureties are entitled to be subrogated to all the creditor's rights as to any fund, lien or equity to which he may have recourse against any other person or property on account of the debt: Eddy *v.* Traver, 6 Paige 521; 1 Lead. Cas. in Eq. 143. And the doctrine does not depend upon privity, nor is it confined to strict cases of suretyship: McCormick *v.* Irwin, 11 Casey 111; 1 Lead. Cas in Eq. 148; 2 Id. 280, 283. The rule is broad enough to include every instance where one pays a debt for which another is primarily answerable, and that should, in equity and good conscience, have been discharged by him: 1 Lead. Cas. in Eq. 148, and cases cited.

It is wholly immaterial that Bender did not know of the existence of the paper. It enured to his benefit when made, and he could sue on it at any time: Kramer & Rahm's Appeal, 1 Wright 71, and cases cited; Rice's Appeal, 29 P. F. Smith 168; 1 Lead. Cas. in Eq. 173. Nor could it have been withheld from him by the sureties: 1 Lead. Cas. in Eq. 174. And conversely, whenever a surety learns of the existence of a security, he is entitled to its benefit, though ignorant of it before.

*Robb & Fitzsimmons*, for defendant in error.—How can George be held responsible on such a paper, detached as it was from any agreement, lease or deed. It is *nudum pactum*. By its terms, it imports a consideration, but when it is rejected by the party to whom it purports to have been given, it is a nullity. Bender, for whom it was drawn, having rejected the deed, how can Mueller enforce the payment of the same? The plaintiff in error admits in his argument "that Bender never saw the paper," and also that "there was no evidence of any contract between George and the sureties." Certainly the learned judge, under all the testimony in the case, had nothing to leave to the jury, and was clearly right in granting the nonsuit.

Mr. Justice TRUNKEY delivered the opinion of the court, November 17th 1879.

Bender gave Tochterman a lease for the term of four years and eight months from the 1st of August 1872, and Meyer & Co. and John M. Mueller were sureties for performance of the lessee's covenants. Tochterman, August 3d 1873, assigned his term to Campbell, who soon after assigned the same to Anderson, for whom George became security, as bail absolute, for payment of the rent and performance of the covenants mentioned in the agreement. On the

[Bender v. George.]

face of the writings, George was bound to Bender and his deed was admissible in evidence.

The testimony which was received must be taken as establishing every fact, which the jury would have been warranted in finding had it been submitted. And offered testimony, erroneously rejected, will be considered as if received, in determining if the nonsuit was rightly ordered. Then, when George executed the deed, he knew Anderson was in the house, and that he alone was going bail for payment of the rent. Tochterman had failed, and his sureties, who had taken charge of the premises, made the contract with Anderson, procured the assignment of the lease to him, gave him possession, and he got the paper signed by George which he delivered to them. In this transaction, Bright, a member of the firm of Meyer & Co., was the active agent for the sureties. Upon these facts, shown by written and oral evidence, it is clear that the plaintiff was entitled to recover such sum as he had been compelled to pay by the default of Anderson.

For the time that Anderson held the term as assignee of the lease, by privity of estate, not of contract, he was directly responsible to the lessor for the performance of the covenants, although Tochterman and his sureties were not discharged: Borland's Appeal, 16 P. F. Smith 470; Negley v. Morgan, 10 Wright 281. Upon the latter having been made to pay, they had right to all the remedies which the lessor had against Anderson and George. Where two persons are equally liable to the creditor, if as between themselves, there is a superior obligation resting on one to pay the debt, the other, after paying it, may use the creditor's security to obtain reimbursement. The doctrine of subrogation does not depend on privity, nor is it confined to cases of strict suretyship. It is a mode which equity adopts to compel the ultimate discharge of the debt by him who, in good conscience, ought to pay it, and relieve him whom none but the creditor could ask to pay: McCormick's Adm'r. v. Irwin, 11 Casey 111.

In some cases, a conflict of equities may arise, as between the former and latter sureties, but not here. In consideration of the assignment, Anderson agreed with the sureties of the original lessee to pay the rent, and gave security for his performance. In strictness, the legal liability of himself and his surety was to the lessor; in equity and good conscience they were bound to save harmless those with whom Anderson actually contracted. The principal creditor was entitled to the full benefit of that security, even if he did not know of its existence till sometime after it was given: Kramer & Rahm's Appeal, 1 Wright 71. Had he released it, the prior sureties to himself would have been discharged. He could not free George and hold them. The obligation of George was to pay on Anderson's default; but Bender chose to make Mueller pay, and, by familiar principles in equity, the latter is allowed

[Bender *v.* George.]

to use the creditor's name for recovery against him who ought to have paid the debt.

As already stated, the deed set forth in the first offer of testimony was admissible, and we also think the fourth offer should have been received. In view of the foreshadowed defence, the fourth offer was pertinent and corroborative of the plaintiff's other testimony.

Judgment reversed, and <em>procedendo</em> awarded.