## In re BRUCE.

(District Court, N. D. New York. December 31, 1907.)

1. EXECUTION—PAYMENT—APPLICATION OF FUNDS.

Action having been brought and judgment recovered against an alleged firm for a debt contracted after A.'s retirement as a partner, payment was demanded of A., who, in order to prevent a levy on his property, executed a check to the sheriff for an amount sufficient to pay the balance of the judgment; the sheriff agreeing to hold the check until he could procure an assignment of the judgment from the judgment creditor. The next day an execution was levied on the property of the surviving partner, which the sheriff advertised for sale, but which was not sold until after the surviving partner had been adjudged a bankrupt more than four months after the entry of the judgment and delivery of the execution to the sheriff, prior to which the judgment had been assigned, and the plaintiffs in execution having demanded their money from the sheriff, he had remitted the same to them out of the proceeds of A.'s check. *Held*, that the sheriff received such check in trust as security, so that he had no right to apply it in satisfaction of the execution until he had made the sale of the continuing partner's property, and that the sheriff's improper application of the check did not constitute payment of the execution nor satisfaction of the judgment.

2. SUBROGATION—SCOPE OF REMEDY.

The remedy of subrogation is not limited to sureties or quasi sureties, but extends to cases where a person not a volunteer pays a debt which in equity and good conscience he ought not to pay, for the purpose of protecting property in which he is interested.

3. EXECUTION—VALIDITY OF LIEN—DORMANT EXECUTION.

Where a levy was legally made under an execution, and the sale was adjourned from time to time and stayed by order of court, the execution did not become dormant.

4. BANKRUPTCY—LIENS—EXECUTION—SUBROGATION.

Judgment having been recovered against A. after his retirement from a firm, for a firm debt for which he was not liable, because of the con-

tinuing partner's misrepresentations that the debt was paid, on execution being presented and payment demanded from A., he informed the sheriff that the continuing partner was liable on the debt, and that his property should be first levied on. In order to prevent a levy on A.'s property, he gave a check for the balance due on the judgment, which check was subsequently made good by money advanced by A.'s wife, to whom the judgment was assigned after levy on the continuing partner's assets. More than four months after the taking of the judgment and the delivery of the execution to the sheriff, the continuing partner became a bankrupt while the levy was still in force. *Held*, that the assignee of the judgment and execution was entitled to subrogation to the rights of the judgment creditor, and was entitled to have the proceeds of the property levied on in the hands of the bankrupt's trustee applied in settlement of the amount such assignee advanced as against the trustee and general creditors of the bankrupt, who had no greater rights than those of the bankrupt when the petition was filed and the adjudication made.

Action to Declare Property of Bankrupt Subject to Lien of Judgment.

The question involved is the validity in the hands of Jessie M. Aldrich, assignee thereof, against the estate of the above-named bankrupt of a judgment, and execution and levy thereunder, for $241.74, less a payment of $73.87, in favor of the Syracuse Hardware & Iron Company against Edwin S. Aldrich and Timothy E. Bruce, said bankrupt, entered and docketed in Onondaga county clerk's office December 27, 1907, transcript filed and judgment docketed in Franklin county clerk's office December 28, 1906, execution issued January 4, 1907, and levy made March 2, 1907, a sale under such levy having been stayed by this court. The matter was sent to Wm. P. Badger as special master to ascertain and report the facts and testimony.

McClary & Allen, for trustee.
Leslie M. Saunders, for Jessie M. Aldrich.

RAY, District Judge. Prior to October 18, 1905, Edwin S. Aldrich, husband of Jessie M. Aldrich, and said Timothy E. Bruce were in partnership, doing business under the firm name of "the Aldrich-Bruce Company," at Tupper Lake, N. Y. On that day, October 18, 1905, they agreed to dissolve the partnership, and Aldrich sold his interest to Henry W. Bruce, the father of Timothy E. Bruce, the bankrupt, who immediately transferred such interest to said Timothy E. Bruce. In fact, Timothy E. Bruce thereupon became the owner of the business, and liable for all debts thereafter incurred in the business. No notice of the dissolution was published until in December, 1906, and after the service of the summons and complaint in the action in the Supreme Court of the state, wherein and upon which the judgment hereafter referred to was entered. On and after May 7, 1906, and while said Timothy E. Bruce was running the business, he purchased of the Syracuse Hardware & Iron Company certain goods, for the purchase price of which the judgment was obtained, through an agent of that company then at Tupper Lake, informing such agent at the time that the firm of Aldrich-Bruce Company no longer existed. The goods came addressed to Aldrich-Bruce Company, and were accepted and retained by Bruce in his business. Aldrich knew nothing whatever of the purchase of these goods, and had nothing to do with the business at the time. As Bruce did not pay for the goods said Syracuse Hardware & Iron Company commenced an action in the Supreme Court of the

state of New York, county of Onondaga, against said Aldrich and Bruce, and the summons and complaint were served on both defendants. Aldrich thereupon went to Tupper Lake and saw Bruce who told Aldrich he had sent a check to pay the claim. Aldrich relied on this statement, and did not appear or answer in the suit, and thereafter judgment was entered against both defendants. No such check had been sent. Thereafter, and December 31, 1906, an execution on such judgment to the sheriff of Franklin county was duly issued, and January 4, 1907, same was placed in the hands of George S. Henry, as sheriff of Franklin county, where Bruce resided, and thereafter, and March 2, 1907, his deputy, one Kempton, presented same to Aldrich at Regis Falls, N. Y., where he lived and was doing business, and demanded payment. Aldrich informed the deputy that the judgment was for Bruce to pay, and that he did not want his stock levied upon, but the deputy stated that Bruce was covered by chattel mortgages, and that if not paid he would be compelled to levy. Aldrich then stated that rather than have his stock of goods levied upon he would place in the hands of the deputy his check for an amount sufficient to pay the balance of the judgment, Bruce having paid a part, and fees, and did place in his hands his check for $205, and requested him to hold it until he could procure an assignment of the judgment. To this arrangement the sheriff assented and promised to do his best in holding the check. That same evening Aldrich went to Tupper Lake with the deputy sheriff, at Aldrich's suggestion and request, and the deputy, by virtue of such execution on the next day, levied upon the stock of goods and fixtures belonging to said Bruce. He did not remove the goods but left them in the care of Bruce who receipted for the same in writing. This receipt stated, amongst other things, that $53.87 had been paid on the execution, leaving due $211, including expenses, and "such goods" those levied upon, "being left with me as caretaker, hereby waiving any delay in advertising the said goods for sale by the said sheriff." The sheriff also levied on the accounts, etc., of Bruce, and this receipt stated that the goods levied on should be sold by Bruce for cash only, the money to be accounted for and paid over to the sheriff as well as all money received by him on the accounts. This was duly signed by Bruce and acknowledged. The sheriff immediately advertised the goods of Bruce for sale on the execution, and Aldrich applied to the plaintiffs in the execution for an assignment of the judgment in blank. The day appointed for a sale was April 26, 1907, but same was adjourned from time to time, and, finally, to June 14, 1907. The sheriff made the last adjournments May 9 and May 25, 1907, respectively. In the meantime, and on the 8th day of May, 1907, said Timothy E. Bruce filed his voluntary petition in bankruptcy, and was duly adjudicated a bankrupt on the 9th day of May, 1907, more than four months after the docketing of such judgment and the delivery of the execution to the sheriff. In the meantime, and on the 13th day of March, 1907, the Syracuse Hardware & Iron Company, plaintiff in the execution, executed and soon thereafter, March 29th, delivered to said Edwin S. Aldrich an assignment in blank of said judgment and all moneys due thereon, and the name of Jessie M. Aldrich was filled in

such assignment as the assignee of such judgment. Jessie M. Aldrich advanced to her husband, Edwin S. Aldrich, at the time he gave his check to the sheriff the sum of $150 to make his check good. In the meantime the plaintiff in the execution demanded their money, and the sheriff cashed the check of Aldrich, and remitted to their attorneys, who turned the money over to such plaintiff, but not until after the assignment was executed.

It is quite evident that the assignment was withheld until the money was sent and received by the attorneys. The sheriff also returned the execution to Franklin county clerk's office, to the sheriff of which county it was issued, before the assignment was received. On receiving the assignment completed as aforesaid, the sheriff went to the clerk's office and erased a part of the return made, which return read as follows: "State of New York, Franklin County. ss.: The within execution paid and satisfied in full. Dated Malone, N. Y. 8/12/07. Geo. S. Henry, Sheriff"—and inserted "assigned to Jessie M. Aldrich," so that it then read "the within execution assigned to Jessie M. Aldrich," the date remaining unchanged. The questions are, was this execution in fact satisfied by the check given to the sheriff by Aldrich; was the levy on the property of Bruce abandoned by the sheriff as well as the proposed and advertised sale; and was Bruce released as caretaker for the sheriff?

The equities are all with Aldrich as against the bankrupt, the bankrupt estate and its creditors, and the trustee in bankruptcy. It is evident that Edwin S. Aldrich did not intend that his check placed in the hands of the sheriff should be applied in payment of the balance of such judgment unless the sheriff failed to make the balance of the execution from the property of Bruce. It is evident that the sheriff so understood it and received the check on that understanding. I do not think he had any right to apply it in satisfaction of the execution until he had made sale of Bruce's property levied on. If he failed to make the amount thereof, then he had the right to apply the check, or if he decided it was fruitless to pursue the property of Bruce, then he should have gone to Aldrich and levied on his property, or advised him of his purpose to apply the check to the payment of the execution. He held the check in trust and as security. He had no right to apply it except to fulfill the purpose for which it was delivered to and accepted by him and in accordance with the agreement. Aldrich never consented that he should. Having taken it for one purpose, the sheriff had no right to apply it to another. But the assignment did not come, and he returned the execution as satisfied, when it was not in fact satisfied by any payment made by either defendant or by a sale of any of the property of either of them. This he did March 12, 1907. Did he abandon the levy on the property of Bruce? Having no execution in his possession and having returned it as satisfied, if it was in fact satisfied by either Aldrich or Bruce, then the levy fell as did the proposed sale. But it was not in fact satisfied as it was not paid. It was the duty of the sheriff to retain it and enforce it as against Bruce and the property Bruce held as caretaker. That the sheriff did not intend to release the property of Bruce is demonstrated by the fact that he

continued to adjourn the sale thereof, thereby asserting his jurisdiction over it. He rejected bids when offered of $150 and $200. No other rights have intervened. The property of Bruce levied upon and held by him as caretaker for the sheriff at the time he filed his petition in bankruptcy has been converted into money, and is with this court taking the place of the property under an agreement entered into by all interested. Again, Bruce bought the property, had the proceeds, and they were mingled with his estate. Aldrich had no part of it, and assumed no obligation. He had a defense to the action, but was induced not to make it by the fraud of Bruce, who induced him to think he had sent a check which paid the claim. Aldrich turned out his check, made good by $150 of the money of his wife, as security to the sheriff in case the property of Bruce should fail to pay the full amount. The sheriff levied on that property, turned it over to Bruce, who agreed to hold it for the sheriff in satisfaction of the execution so far as it would go. He so held it when he filed his petition in bankruptcy. He held it in trust for the sheriff and owners of the judgment when the adjudication was made.

It seems clear to me that in equity this judgment and execution in the hands of Mrs. Aldrich is a lien on the proceeds of this property; one this court, as a court of equity, has the power to protect and enforce as against the trustee and general creditors who have no greater rights than Bruce had when the petition was filed and the adjudication made. The sheriff by mistaken action or errors of law or of fact could not change and defeat the rights and equities of Edwin S. Aldrich or of Jessie M. Aldrich in this property of Bruce so long as he retained the levy, as he did, and the rights of third parties did not intervene. Had some other creditor of Bruce obtained judgment, issued execution, and placed same with the sheriff, or had some person loaned money, taking a mortgage on the property, with this execution in the clerk's office indorsed "Satisfied," the case would be different. It is of course true that had Edwin S. Aldrich paid the judgment it might have been extinguished, but he did not pay it or intend so to do. He turned out his check as security to prevent a levy on his own property, an injury to his own business and credit with the agreement that if not collected of Bruce by levy on and a sale of his property that the check should be applied on the judgment. In equity Aldrich was never liable on this judgment. The assignment was applied for and finally came, and it is evident from all the testimony in the case that when the money was sent forward by the sheriff it was with the understanding that, if the assignment came, it was to apply in payment so far as such money had come from Bruce, and on the assignment, as consideration therefor, so far as it came from Edwin S. Aldrich and his wife. The sheriff rectified his error in returning the execution "satisfied" so soon as the assignment came to his knowledge. This he had the right to do as between Aldrich, Mrs. Aldrich, and Bruce. In equity, in any event, Mrs. Aldrich, who now holds this judgment by a valid assignment to her made for a valid consideration paid or furnished by her, is to be regarded as the owner thereof to the extent she put money into the transaction, with interest, from that time, and the judgment is to be regard-

ed and treated as unpaid and unsatisfied. There is no other way to protect her adequately or at all.

In Arnold v. Green, 116 N. Y. 566, 571, 23 N. E. 1, it was held that where one who pays a mortgage upon land in which he has an interest, so that he is not a mere volunteer, and for which mortgage debt he is not personally liable, stands in such a relation thereto that his interests, whether legal or equitable, cannot otherwise be adequately protected, the transaction will be treated in equity as an assignment, and he is entitled to enforce it (the mortgage), for his own reimbursement and the protection of his interest. This rule applies here to Edwin S. Aldrich, and as he had the judgment assigned to his wife who furnished $150 of the money, she has all his rights and equities. Vann, J., who delivered the opinion of the court said:

"Under some circumstances the payment of a mortgage does not satisfy it or destroy its lien, because equity regards the person making the payment as the owner thereof for certain definite purposes, and keeps it alive, and preserves its lien for his benefit and security. According to the well-established principles upon which the doctrine of equitable assignment by subrogation rests, if the person paying stands in such a relation to the premises that his interest, whether legal or equitable, cannot otherwise be adequately protected, the transaction will be treated in equity as an assignment. Sheldon on Subrogation, §§ 1, 3, 14, 16; 3 Pomeroy's Equity Jur. § 1211; Jones on Mortgages, § 874. The remedy of subrogation is no longer limited to sureties and quasi sureties, but includes so wide a range of subjects that it has been called the 'mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it.' Harris on Subrogation, § 1; Barnes v. Mott, 64 N. Y. 397, 401, 21 Am. Rep. 625; Stevens v. Goodenough, 26 Vt. 676; Harnsberger v. Yancey, 33 Grat. (Va.) 527; Smith v. Foran, 43 Conn. 244, 21 Am. Rep. 647. While a mere volunteer, with no obligation to pay or interest to protect, is not entitled to its aid, it is frequently applied in favor of a vendee of incumbered real estate, who, although not personally liable, has paid the debt of another which is a charge upon the land, and which, if not paid, might cause him to lose his interest therein. Under such circumstances the debt, although paid and satisfied in form, is regarded in equity as neither paid nor satisfied in fact, but by operation of law the former holder ceases to be the creditor, while the person paying takes his place as owner of the debt and security unimpaired. Where, within the limitations suggested, benefit may result to the person paying without injury to the person who should pay, equity casts the burden upon the latter, who ought in fairness to bear it, provided it will not work injustice or disturb the rights of other creditors of a common debtor. Id.; Johnson v. Zink, 51 N. Y. 333; Cole v. Malcolm, 66 N. Y. 363; Twombly v. Cassidy, 82 N. Y. 155; Gans v. Thieme, 93 N. Y. 225, 232; Averill v. Taylor, 8 N. Y. 44, 51."

I see no reason why this rule is not applicable here. Aldrich and his wife paid the debt of Bruce, if it was paid, and he had such an interest that in equity he is entitled to be regarded as the owner of the judgment which, for a consideration, was transferred to the wife. She may enforce it, and the lien gained by the execution and levy and receipt of the bankrupt for the property as caretaker for the sheriff, which levy was not released. The execution did not become dormant as the sale was adjourned from time to time and only stayed by order of this court pending an ascertainment of the facts. As Judge Vann said, the rights of third persons have not intervened.

As Judge Vann said:

"The remedy of subrogation is no longer limited to sureties or quasi sureties, but includes so wide a range of subjects that it has been called the mode which

equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it."

Who, but Bruce, in justice, equity, and good conscience ought to pay this debt? Who incurred the debt? Who had the property and its proceeds? Whose property was levied upon on the execution, advertised for sale, and in legal effect delivered to the sheriff for its payment? Who held this property in question for the sheriff to apply in satisfaction of this judgment, and in writing promised it should be so applied? Was it not Bruce and his property? Should the errors or mistakes of the sheriff defeat these equities or change them? Would a court do its duty, acting as a court of equity, which a court of bankruptcy is (section 2, Bankr. Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]), not to recognize and enforce these equities? I think not. The rule as laid down in Sheldon on Subrogation, § 11, is that:

"The doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnity from the fund out of which should have been made the payment which he has made to the creditor. It is a mode which equity adopts to compel the ultimate discharge of a debt by him who in equity and good conscience ought to pay it, and to relieve him whom only a creditor would ask to pay, although as between debtor and creditor the debt may be extinguished, yet, as between the person who has paid the debt and the other parties, the debt is kept alive so far as may be necessary to preserve the securities."

In Cole v. Malcolm, 66 N. Y. 363–366, it was held:

"The doctrine of subrogation applies where a party is compelled to pay the debt of a third person to protect his own rights, or to save his own property."

This is such a case. Aldrich put up his own money with that of his wife to pay the debt of Bruce in a certain event, because he was compelled so to do by the wrong of Bruce, not because he owed or had incurred the debt—not because he was morally obligated to pay. He was compelled to do this to "protect his own rights," and "to save his own property," and to protect his own credit.

Judge Earl, in giving the opinion of the court, said, page 366:

"The equitable doctrine of subrogation has many illustrations in reported cases. Sandford v. McLean, 3 Paige (N. Y.) 117, 23 Am. Dec. 773; Atlantic Ins. Co. v. Storrow, 5 Paige (N. Y.) 285; Slade v. Van Vechten, 11 Paige (N. Y.) 21; Graham v. Dickinson, 3 Barb. Ch. (N. Y.) 169; Ellsworth v. Lockwood, 42 N. Y. 89; Patterson v. Birdsall, 6 Hun, 632, affirmed in Court of Appeals; Lidderdale's Ex'rs v. Robinson's Adm'r, 2 Brockenbrough (U. S.) 159, Fed. Cas. No. 8,337; Cottrell's Appeal, 23 Pa. 294; Bouvier's Dict., 'Subrogation.' It is generally and most frequently applied in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is only secondary liable for the debt; but it is also applicable to cases where a party is compelled to pay the debt of a third person to protect his own rights, or to save his own property. In Cottrell's Appeal, Woodward, J., said: 'Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract or privity of any kind exists between parties. Whenever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditors possessed against the debtor.' In Lidderdale's Exr's v. Robinson's Adm'r, Chief Justice Marshall said: 'When a person has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible shall be clothed with the legal garb with which the contract he has discharged was

invested, and he shall be substituted, to every equitable intent and purpose, in the place of the creditor whose claim he has discharged.' "

In Pease v. Egan, 131 N. Y., at page 273, 30 N. E., at page 105, Mr. Justice Peckham, now of the Supreme Court of the United States, said:

"In the cases of Gans v. Thieme, 93 N. Y. 225, and Arnold v. Green, 116 N. Y. 566, 23 N. E. 1, while not particularly in point here, are yet evidences of the rule that no contract need subsist upon which to base the right of subrogation, and that it is a remedy which equity seizes upon in order to accomplish what is just and fair as between the parties, where the party seeking the aid of the court and the benefit of the rule has been no mere volunteer, and where his action is based upon general equitable rules which it is the peculiar province of a court of equity to enforce."

Mrs. Aldrich is here not asking to be subrogated strictly, but to have her assignment of this judgment, made for a valid consideration at a time when, to the knowledge of the sheriff, the property of the one who incurred the debt, whose debt it was, had been set apart under a levy on the execution, and placed in his hands to sell for its payment, recognized; to have the judgment and the execution and levy thereunder recognized and enforced as valid and subsisting. The assignment actually subrogated her to all the rights and equities of her husband. The plaintiff in the judgment and execution did not exact payment or understand it was receiving payment in satisfaction and discharge of the judgment. It did understand the money was paid, except as to a small part, for an assignment thereof. The check of $205 was not placed in the hands of the sheriff to pay the judgment except in a certain contingency, which never occurred. That the sheriff prematurely applied it and mistakenly returned the execution as "satisfied" or paid when it was not, a mistake which he immediately corrected, did not in fact either pay or satisfy the judgment or execution, or destroy the equities.

The assignee of the judgment, Jessie M. Aldrich, is entitled to an order and decree that the said judgment execution and levy are valid and constitute a valid lien on the fund derived from the sale of the property in question, and constituted such a lien at the time of the adjudication in bankruptcy, and were and are valid as against the trustee in bankruptcy, having been obtained in good faith more than four months prior to such adjudication to the amount of $167.87, and interest thereon from March 13, 1907; that the proceeds of the sale of such property now in the hands of the trustee, Clarence L. King, subject to the order of this court, so far as they will pay said sum of $167.87 and interest, be paid over by said trustee to said Jessie M. Aldrich in satisfaction of such lien.