## F. W. WOOLWORTH CO. v. PETERSEN.
### No. 1232.

Circuit Court of Appeals, Tenth Circuit.
June 26, 1935.

Edward G. Knowles, of Denver, Colo. (Hughes & Dorsey, of Denver, Colo., and Davies, Auerbach & Cornell, of New York City, on the brief), for appellant.

B. F. Reed, of Denver, Colo. (Joel E. Stone, of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On January 2, 1931, Woolworth Company and Petersen entered into an employment contract whereby Petersen was to act as a superintendent of the Company at any general managing office of the Company designated by it.

The contract in part read as follows:

"First. That the party of the second part agrees faithfully and diligently to work as Superintendent for the said party of the first part for a term of one year from the first day of January, 1931, and

continue from year to year unless written notice to cancel is given by either party to the other prior to December 1st of any year. In the absence of such notice, this agreement shall continue as heretofore. The party of the second part shall give his time and attention to the business without unreasonably absenting himself except by consent of the party of the first part, who shall be the sole judge of the reasonableness of any absence, and whose decision shall be final and conclusive.

"Fifth. In consideration of the services to be rendered aforesaid, the party of the first part agrees to pay the said party of the second part a salary equal to One and Four Thousand two hundred eighty-seven ten-thousandths of one per cent (1.4287 of 1%) per cent of the net profits derived from the sale of merchandise in the stores directly under the control and management of the Denver District Office of the party of the first part, which payment shall be made annually as soon as may be convenient after January first, but not later than March first. The party of the second part shall receive no other salary or compensation whatever, except when sent on business of the company away from the city in which his usual office or place of business may be situated, when he shall receive only his actual necessary expenses.

"Eighth. It is mutually agreed that either party hereto may terminate this agreement any time during the year by giving to the other party thirty (30) days written notice of his election so to do, and this agreement shall end on the expiration of such thirty (30) days written notice.

"Ninth. The death, discharge or resignation of the party of the second part shall end this contract, and he or his legal representatives shall be entitled to share in the profits only to the time of his death, discharge or resignation, such share to be based upon the total net profits for the year pro rata for the time served. The final settlement cannot be required until after the succeeding annual inventory shall be finished, not later, however, than March first of the succeeding year and no interest shall be paid on the shares so fixed."

On January 13, 1934, the Company gave written notice to Petersen that it elected to terminate the contract thirty days from that date, to wit, on February 13, 1934. No other notice was given.

On February 17, 1934, Petersen brought this action to recover damages for alleged breach of the contract. Trial by jury was waived.

It was stipulated at the trial that 1.4287 of one per cent of the net profits derived from the sale of merchandise in the stores directly under the control and management of the Denver District Office of the Company during 1934, amounted to $16,903.51, and that the pro rata amount thereof for the period from January 1 to February 13, 1934, was $2,037.68. The Company offered to pay the latter amount. After his discharge Petersen sought other employment and was able to earn $200 during the remainder of 1934.

The trial court held that there was an irreconcilable conflict between the First and Eighth paragraphs of the contract, and that the former governed. It gave judgment in favor of Petersen for $16,703.51. Having preserved its right to review by appropriate motions and exceptions, the Company has appealed.

In undertaking to arrive at the true meaning of the contract in question, certain well-settled rules of construction should be kept in mind. The primary rule in the construction of contracts is that the court must endeavor to ascertain the mutual intention of the parties as manifest by the language used, and, in so far as it is possible to do so consistently with legal principles, to give effect to that intention.[1] A contract must be construed as a whole, and the intention of the parties deduced, not from particular words and phrases, but from a consideration of the context of the entire agreement.[2] If possible, effect should be given to every word, phrase, clause and sentence of a contract.[3] And

[1] Uinta Tunnel Min. & T. Co. v. Ajax Gold Min. Co. (C. C. A. 8) 141 F. 563, 566; Barnsdall Oil Co. v. Leahy (C. C. A. 8) 195 F. 731, 733; Gill v. Benjamin Franklin R. & H. Co. (C. C. A. 3) 43 F. (2d) 337, 338; Pressed Steel Car Co. v. Eastern Ry. Co. (C. C. A. 8) 121 F. 609.

[2] E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co. (C. C. A. 8) 64 F. (2d) 224, 227, 89 A. L. R. 238; Canadian Northern Ry. Co. v. Northern Miss. Ry. Co. (C. C. A. 8) 209 F. 758, 761, 762; Atlas Assur. Co. v. Lawrence (C. C. A. 8) 34 F.(2d) 401, 405, 406; Miller v. Robertson, 266 U. S. 243, 251, 45 S. Ct. 73, 69 L. Ed. 265.

[3] Chicago Great W. R. Co. v. Farmers' Shipping Ass'n (C. C. A. 10) 59 F.(2d) 657, 659; Utilities Production Corp. v. Carter Oil Co. (C. C. A. 10) 72 F.(2d)

apparently conflicting provisions should be reconciled, if that can be done by any reasonable construction.[4]

The First paragraph of the contract provides for a minimum term of one year, and for automatic extensions for like terms. It provides that either party may prevent automatic extension at the termination of a year by giving notice thereof at least thirty-one days before the expiration of such year.

The parties were here undertaking to fix the term of the contract under conditions which they expected normally and ordinarily to ensue, and to provide a simple method for renewal for terms of like duration, without the formal execution of new contracts. The notice to be given on or before December 1 of each year, to avoid automatic renewal, was required, we think, in order that the parties might reasonably assume after December 1 of each year when no notice was given, that in the usual and ordinary course of events the employment would continue, and that the Company need not seek the services of a new superintendent and Petersen need not look for new employment for the ensuing year.

But it is a reasonable assumption from the language used, that the parties contemplated conditions might arise which would render it desirable for one or the other to terminate the contract during a yearly term, and so they provided in the Eighth paragraph a method by which that could be done, thereby limiting the general language of the First paragraph. The two provisions gave a certain stability to the period of employment and at the same time gave either party the right to terminate the contract at any time on thirty days' notice.

It is true the parties could have provided that the contract should continue until terminated by thirty days' written notice by either party, but mere verbosity does not necessarily create conflict. Since the compensation was based on annual profits and payable annually, it was only natural the parties should have provided for a term of one year and for automatic extensions for succeeding yearly periods, and because conditions might arise making it desirable for one or the other to do so, that they should also have provided for termination of the contract during such yearly terms.

A provision in an employment contract that it shall continue for a stated term, is not in irreconcilable conflict with a provision that it may be terminated before the expiration of that term by the giving of a specified notice. The latter merely limits the former.[5]

We conclude the parties intended that the contract might be terminated either at the end of a yearly term by giving the notice provided in the First paragraph, or during a yearly term by giving the notice provided in the Eighth paragraph.

This construction is strengthened by a consideration of the Ninth paragraph which provides that, in the event of the resignation or discharge of Petersen before the end of the term of the contract, his compensation should be based upon that proportion of the net profits for the year which the time served should bear to the entire year. This indicates the parties contemplated that Petersen might resign or the Company might discharge him by giving the notice provided for in the Eighth paragraph, and in either of such events he would not serve to the end of an annual term. It evidences the intent of the parties that the contract should be terminable either during or at the end of a yearly term.

The judgment is reversed and the cause remanded for a new trial.

655, 657; Sasinowski v. Boston & M. R. R. (C. C. A. 1) 74 F.(2d) 628, 633; Pillsbury Flour Mills Co. v. Great Northern Ry. Co. (C. C. A. 8) 25 F.(2d) 66, 69.

[4] Sasinowski v. Boston & M. R. R. (C. C. A. 1) 74 F.(2d) 628, 633; Linde Dredging Co. v. Southwest L. E. Myers Co. (C. C. A. 5) 67 F.(2d) 969, 972; Rushing v. Manhattan L. I. Co. (C. C. A. 8) 224 F. 74, 76.

[5] Gordon v. Northwestern Nat. Life I. Co. (C. C. A. 5) 193 F. 405; Texas Cotton Co-op. Ass'n v. Anderson (Tex. Civ. App.) 67 S.W.(2d) 406.