**NEW YORK CASUALTY CO. v. SINCLAIR REFINING CO.**

No. 1874.

Circuit Court of Appeals, Tenth Circuit.

Nov. 6, 1939.

Rehearing Denied Dec. 11, 1939.

. Stephen Chandler and Richard W. Fowler, both of Oklahoma City, Okl. (Troy Shelton, John W. Swinford, and Edgar S. Vaught, Jr., all of Oklahoma City, Okl., on the brief), for appellant.

Summers Hardy, of Tulsa, Okl., and John H. Miley, of Oklahoma City, Okl. (Miley, Hoffman, Williams, France & Johnson, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

On September 20, 1930, Meador & Whitaker, a copartnership, entered into a construction contract with Sinclair Texas Pipe Line Company[1] to construct a section of pipe line for Sinclair in Oklahoma. It provided that in performing the contract Meador & Whitaker should be an independent contractor; that Sinclair should have neither direction nor control of the

---

[1] In 1932 the name Sinclair Texas Pipe Line Company was changed to Sinclair Prairie Pipe Line Company. Thereafter, it was merged and consolidated into Sinclair Refining Company. The Sinclair Companies will be hereinafter referred to as Sinclair.

work or of the employees of Meador & Whitaker, except with respect to the results obtained; that the work should be done in a manner finally acceptable to Sinclair; that Meador & Whitaker should be liable for any injuries to third persons caused by any act or omission of it, or its agents, servants, or employees, and should indemnify and hold Sinclair harmless from any and all losses, claims, damages, and causes of action of every nature or character which might arise or be claimed to have arisen by any act or omission of Meador & Whitaker, or its agents, servants, or employees; and that Meador & Whitaker should "protect all trenches and ditches at all times by barricades and lanterns" and all things required by an ordinarily prudent person to protect third persons from injury.

In August, 1930, the New York Casualty Company[2] issued a liability policy to Meador & Whitaker, insuring it from August 22, 1930 to August 22, 1931, against loss from liability imposed by law for damages on account of bodily injuries accidentally suffered or alleged to have been suffered by any person or persons not employed by Meador & Whitaker. By the terms of the policy the Casualty Company's liability for loss on account of one person so injured was limited to $10,000, and subject to the same limit for each person, its total liability on account of any one accident resulting in injury to more than one person, was limited to $20,000. The policy expressly provided that the Casualty Company should defend, in the name and on behalf of Meador & Whitaker, any suits or other proceedings which might be instituted against the latter on account of such injuries, and should pay all costs assessed against Meador & Whitaker in any legal proceeding defended by the Casualty Company, all premiums on appeal bonds required in any such proceeding, and all interest accruing after entry of judgment to the date of payment by the Casualty Company of its share of such judgment. The policy further provided that prepayment of any judgment that might be recovered against Meador & Whitaker upon any claim covered by the policy should not be a condition precedent to any right of action against the Casualty Company on the policy, and that the Casualty Company was bound to the extent of its liability under the policy to pay and satisfy any such judgment, and that an action might be maintained upon any such judgment by the injured person to enforce the liability of the Casualty Company under the policy.

In September, 1930, Sinclair obtained from Grace and Sam Patterson a grant of a right of way across their land for the pipe line. Meador & Whitaker, during the course of the construction work under the contract, left an open ditch and bell hole on the Patterson premises. On May 21, 1931, H. E. Ross and Elmer Patterson commenced actions in the district court of Payne County, Oklahoma, against Sinclair and Meador & Whitaker to recover damages for personal injuries sustained by reason of falling into the open ditch and bell hole. At the request of Meador & Whitaker, the Casualty Company, pursuant to the provisions of its policy, assumed the defense of the actions, under an agreement that the Casualty Company did not thereby acknowledge liability nor waive its right thereafter to contest liability on the ground that it had not been notified by Meador & Whitaker of the accidents in accordance with the provisions of the policy. The Casualty Company retained James S. Ross to defend the actions. At the trial of the actions, H. E. Ross recovered a judgment for $25,000 and Patterson a judgment for $10,000 against Meador & Whitaker and Sinclair.

James S. Ross, counsel for the Casualty Company and attorney of record for Meador & Whitaker in the personal injury actions, and John Kilgore, counsel for Meador & Whitaker, were desirous of prosecuting appeals from such judgments and of furnishing bonds to supersede them pending appeal. They experienced difficulty in securing supersedeas bonds and at a conference with Edward H. Chandler, general counsel for Sinclair, on January 9, 1932, requested Chandler to have Sinclair provide the supersedeas bonds. Chandler stated that Sinclair was indemnified against liability under its contract with Meador & Whitaker and at first refused to provide the bonds. Kilgore expressed doubt that Meador & Whitaker could provide the bonds. Finally, Chandler stated that if Meador & Whitaker would provide indemnity to Sinclair in the amount of $20,000, and James S. Ross would get the Casualty Company to withdraw its reservation of liability and assure him, if the cases were affirmed

by the Supreme Court, that the Casualty Company would pay its liability under the policy, Sinclair would arrange for the supersedeas bonds.

On January 12, 1932, James S. Ross, as attorney for the Casualty Company, wrote a letter to Chandler, the material portions of which read as follows:

"Yesterday I sent the New York Casualty Company a day letter informing it in a general way of our conference and the result of it and requesting that I be permitted to notify you, as attorney for the Sinclair Texas Pipe Line Company, and Meador and Whitaker that it withdrew its reservations of right to disclaim liability to Meador and Whitaker under the policy covering the accident out of which the two above entitled cases grew and received an answer to the effect that I might withdraw the reservations. This I am now doing.

"So, as the cases stand, the liability insurance policy carried by Meador and Whitaker with the New York Casualty Company at the time of the alleged accidents to Ross and Patterson occurred was in force and that as the insured therein, they are fully protected by and entitled to all of the benefits of the conditions of this policy.

"I presume that the above statement from me, as attorney for the New York Casualty Company, fully meets the requirements which you, as attorney for the Sinclair Texas Pipe Line Company, made as a condition to your client signing the supersedeas bonds in these actions. I am sending an extra carbon copy of this letter which you may transmit or deliver to Meador and Whitaker."

Chandler advised James S. Ross that he did not question his authority, but that he would not provide the supersedeas bonds unless he had a telegram from the Casualty Company to the effect that if the cases were affirmed the Casualty Company would pay the amount of its liability under the policy. On January 15, 1932, the Casualty Company wired Chandler as follows:

"Referring Cases Ross and Patterson Versus Sinclair Texas Pipe Line Co and Meador Whitaker District Court Payne County Oklahoma at the Time Accident Out of Which These Lawsuits Grew Meador and Whitaker Had Liability Policy With New York Casualty Company Indemnifying Them in Both Cases not Exceeding Twenty Thousand Dollars Therefore If These Judgments Be Affirmed by Supreme Court Oklahoma the Company Will Recognize Its Liability as Insurance Carrier for Meador and Whitaker to Plaintiffs in Those Cases Not Exceeding Twenty Thousand Dollars in Both Cases in Addition to Costs and Interest the Exact Amount of Our Liability Being Left Open Future Determination Bases on Policy Referred to."

Thereupon, Sinclair caused supersedeas bonds to be executed by itself and Meador & Whitaker, as principals, and the United States Fidelity & Guaranty Company, as surety, and to be filed and approved in the district court of Payne County, Oklahoma, superseding the H. E. Ross and Patterson judgments.

The H. E. Ross and Patterson judgments were affirmed by the Supreme Court of Oklahoma.[3] Sinclair made demand upon the Casualty Company to pay its share of the judgments, including interest and costs. The Casualty Company failed and refused to make such payment. On February 20, 1936, Sinclair, to avoid execution, paid the judgments in full. The amounts paid on the H. E. Ross judgment were $25,000 principal, $6,329.17 interest, and $187.75 costs. The amounts paid on the Patterson judgment were $10,000 principal, $2,528.33 interest, and $134.15 costs.

Sinclair brought this suit against the Casualty Company. In its petition Sinclair set up four causes of action. The first cause of action was predicated upon the telegram of January 15, 1932, from the Casualty Company to Chandler. The second cause of action sought recovery on the theory that Sinclair was subrogated to the rights of Meador & Whitaker under the policy. The third cause of action was predicated upon an alleged promise of the Casualty Company, in the event the H. E. Ross and Patterson judgments should be affirmed, to recognize its liability as insurance carrier for Meador & Whitaker in the sum of $20,000, and interest and costs, and to pay the amount thereof on the judgments.

On the first, second, and third causes of action Sinclair sought recovery of $20,-000, together with interest and costs amounting to $9,179.40, an aggregate of $29,179.40, together with interest at six per cent per annum from February 20, 1936.

---

[3] See Sinclair Texas Pipe Line Co. v. Ross, 175 Okl. 435, 54 P.2d 204; Sinclair Texas Pipe Line Co. v. Patterson, 175 Okl. 438, 54 P.2d 207.

A jury was duly impaneled and sworn to try the issues raised by the first, third, and fourth causes of action. At the close of all the evidence the trial court instructed the jury to return a verdict in favor of Sinclair on the first and third causes of action in the sum of $29,179.40, with interest at six per cent per annum from February 20, 1936, and to return a verdict in favor of the Casualty Company on the fourth cause of action. The court found the issues in favor of Sinclair on the second cause of action and entered judgment on the first, second, and third causes of action in favor of Sinclair in the sum of $29,179.40, together with interest thereon at six per cent per annum from February 20, 1936, and for the costs of the action. The Casualty Company has appealed.

The cardinal rule in the interpretation of contracts is to ascertain the mutual intention of the parties and, in so far as it is possible so to do consistently with legal principles, to give effect to that intention.[4]

The court as nearly as may be should put itself in the place of the parties to the contract when their minds met upon the terms thereof, and from a consideration of the writing itself, of its purpose, and of the circumstances which conditioned its making, endeavor to ascertain the intention of the parties.[5]

Here, the Casualty Company was desirous that Sinclair should provide the supersedeas bonds in the H. E. Ross and Patterson cases. The Casualty Company had undertaken the defense of those cases with a reservation of a right to deny liability. Sinclair offered to secure the supersedeas bonds provided the Casualty Company would withdraw its reservation of right to deny liability and agree to pay its share of the judgments, together with interest and costs, in the event they were affirmed. The letter of January 12, 1932, from James S. Ross to Chandler and the telegram of January 15, 1932, from the Casualty Company to Chandler were sent for the purpose of meeting the terms imposed by Sinclair and of inducing it to secure the supersedeas bonds. The Casualty Company expressly withdrew its reservation of the right to deny liability and acknowledged liability under its policy. This waiver of defense and acknowledgment of liability were given to Sinclair. While the Casualty Company made no express promise to Sinclair to pay, in accordance with the policy, its share of the judgments, with interest and costs, in the event they were affirmed, we think from the language used in the letter and telegram and the attending facts and circumstances, such a promise should be implied. A contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made.[6] It is generally held that where there is an unqualified acknowledgment of an obligation without an express promise to pay, a promise to pay will be implied.[7]

[4] F. W. Woolworth Co. v. Petersen, 10 Cir., 78 F.2d 47, 48;
E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 227, 89 A.L.R. 238;
Canadian Northern Ry. Co. v. Northern Miss. Ry. Co., 8 Cir., 209 F. 758, 761, 762;
Atlas Assur. Co. v. Lawrence, 8 Cir., 34 F.2d 401, 405, 406;
Miller v. Robertson, 266 U.S. 243, 251, 45 S.Ct. 73, 69 L.Ed. 265.
[5] Uinta Tunnel M. & T. Co. v. Ajax Gold Min. Co., 8 Cir., 141 F. 563, 566;
A. Leschen & Sons Rope Co. v. Mayflower Gold M. & R. Co., 8 Cir., 173 F. 855, 857, 35 L.R.A.,N.S., 1;
Sternberg v. Drainage Dist. No. 17, 8 Cir., 44 F.2d 560, 562;
Rocky Mountain Fuel Co. v. Albion Realty & S. Co., 10 Cir., 70 F.2d 212, 215.
[6] Sacramento Nav. Co. v. Salz, 273 U.S. 326, 329, 47 S.Ct. 368, 71 L.Ed. 663;
Brodie v. Cardiff Corp. [1919] A.C. 337, 358;
Montrose Contracting Co. v. Westchester County, 2 Cir., 94 F.2d 580, 582;
Williston on Contracts, Rev.Ed., Vol. 5, § 1293.
Mr. Williston, in his work on Contracts, Rev.Ed., Vol. 5, § 1293, said:
"Wherever, therefore, a contract cannot be carried out in the way in which it was obviously expected that it should be carried out without one party or the other performing some act not expressly promised by him, a promise to do that act must be implied."
[7] Dacovich v. Schley, 5 Cir., 134 F. 72;
Locher v. Kuechenmiester, 120 Mo.App. 701, 98 S.W. 92, 97;
Kessler v. Clayes, 147 Mo.App. 88, 125 S.W. 799, 801;
Weber v. Jantzen, Mo.App., 180 S.W. 432, 434;
Franklin v. March, 6 N.H. 364, 25 Am. Dec. 462;

Sinclair signed the supersedeas bonds as principal and paid a portion of the premium therefor. This was clearly a detriment to Sinclair and a benefit to the Casualty Company, which constituted a valid consideration for the Casualty Company's acknowledgment of liability and implied promise to pay.[8]

We conclude that Sinclair was entitled to recover on the first and third causes of action.

Under the express provisions of the policy H. E. Ross and Patterson were entitled to maintain actions upon their judgments to enforce the liability of the Casualty Company under the policy. Upon the payment of the judgments by Sinclair, did it become subrogated to the rights of H. E. Ross and Patterson against the Casualty Company?

Counsel for the Casualty Company assert that the principle of subrogation is inapplicable because the judgments were obtained by H. E. Ross and Patterson against Sinclair for its own wrong, for which it was primarily liable. We may assume that so far as H. E. Ross and Patterson were concerned, the respective liabilities of Sinclair and Meador & Whitaker were equal. The acts of negligence alleged in the petitions in the personal injury actions were, permitting the ditch and bell hole to remain open and unfilled, and the failure to erect or maintain lights, warnings, or guards for the protection of persons passing along the excavation in the nighttime. These were acts or omissions of Meador & Whitaker with respect to which it had agreed to indemnify and save Sinclair harmless from all losses, claims, damages, and causes of action, and were viola-tions of Meador & Whitaker's express undertaking in the construction contract to protect third persons from injury by maintaining at all times barricades and lanterns at all trenches and ditches. Hence, as between Sinclair and Meador & Whitaker, a superior obligation to pay and satisfy the judgments rested upon Meador & Whitaker.

The doctrine of subrogation is not confined to the relation of principal and surety. It has been expanded so that it is now broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.[9]

Where two persons are equally liable to the creditor, if as between themselves there is a superior obligation resting on one to pay the debt, the other after paying it, absent countervailing equities, is entitled to be subrogated to the debt and the creditor's security therefor, to obtain reimbursement.[10]

Situations, analogous to the instant case, where the doctrine has been thus applied are where one of several joint debtors makes a payment of more than his fair share of the debt, where the owner of property who has mortgaged it to secure a debt discharges the debt after having transferred the property to one who agreed to assume and pay the debt, and where a tenant in common pays off an incumbrance on the common estate. Pomeroy's Eq.Jur., 2d Ed., Vol. 5, § 2345, p. 5189. In the first situation, the debtor who pays the debt is subrogated to the rights of the creditor to compel contribution from his codebtor.[11]

Smith v. Ice Delivery Co., 8 Ga.App. 767, 70 S.E. 195, 197;

Long v. Straus, 107 Ind. 94, 6 N.E. 123, 124, 7 N.E. 763, 765, 57 Am.Rep. 87.

[8] Williston on Contracts, Rev.Ed., Vol. 1, § 102;

Petroleum Refractionating Corp. v. Kendrick Oil Co., 10 Cir., 65 F.2d 997;

Kemp v. National Bank of Republic, 4 Cir., 109 F. 48, 52;

Eastman Land & Inv. Co. v. Long-Bell Lumber Co., 30 Okl. 555, 120 P. 276;

Riddle v. Hudson, 68 Okl. 172, 172 P. 921;

Crane Company v. McHugh Sons, 10 Cir., 108 F.2d 55 (decided November 6, 1939).

[9] Alberti v. Moore, 20 Okl. 78, 93 P. 543, 547, 548, 14 L.R.A.,N.S., 1036;

Richardson v. American Surety Co., 97 Okl. 264, 223 P. 389, 392;

Home Owners' Loan Corporation v. Parker, 181 Okl. 234, 73 P.2d 170;

Burgoon v. Lavezzo, 68 App.D.C. 20, 92 F.2d 726, 729–735, 113 A.L.R. 944;

In re Bruce, D.C.N.Y., 158 F. 123, 128–130.

[10] Bender v. George, 92 Pa. 36, 11 Norris 36.

[11] Keokuk Falls Imp. Co. v. Kingsland & D. Mfg. Co., 5 Okl. 32, 47 P. 484, 487;

City Nat. Bank of Wichita Falls v. Atkinson, 316 Pa. 526, 175 A. 507, 509;

Taylor v. Everett, 188 N.C. 247, 124 S. E. 316, 324.;

Gooch v. Gooch, 70 W.Va. 38, 73 S.E. 56, 58, 37 L.R.A.,N.S., 930;

In the second situation, although both the original mortgagor and his grantee are equally liable to the creditor, as between themselves the mortgagor is secondarily liable and is subrogated to the rights of the mortgagee against the grantee.[12] In the third situation, equity will consider the incumbrance as still existing in favor of the cotenant, who paid the same, to enforce contribution from his cotenant.[13]

The doctrines of subrogation and a constructive trust are analogous. The creditor is regarded as holding his claim against the principal debtor and his securities therefor in trust for the subrogee.[14]

Where two persons are jointly liable to the creditor for a debt so that payment by one would constitute at law an absolute discharge thereof by performance, if as between themselves a superior obligation rests on one to pay the debt and the other pays it, equity will regard the debt as still in force for the benefit of the latter as subrogee.[15]

The policy of insurance, by its express terms, inured to and became enforceable by H. E. Ross and Patterson. In effect, it became security in the hands of H. E. Ross and Patterson for payment of their judgments. Meador & Whitaker was primarily liable as between it and Sinclair to pay the judgments. Hence, we conclude that Sinclair became subrogated to the rights of H. E. Ross and Patterson to maintain an action upon the judgments to enforce the liability of the Casualty Company under its policy.

Meador & Whitaker was not a necessary party to the second cause of action.

The judgments having been paid by Sinclair, the only liability remaining on the part of the Casualty Company was to Sinclair under its right as subrogee of the rights of H. E. Ross and Patterson. No relief was sought against Meador & Whitaker and no right of it can be affected or prejudiced by the judgment in the instant case.

We conclude that the judgment was right and it is accordingly affirmed.

Holloman v. Oxford, Tex.Civ.App., 168 S.W. 437;

Turner v. Turner, 193 Ala. 424, 69 So. 503, 505.

[12] Peters v. Lindley, 88 Okl. 32, 211 P. 409, 410, 41 A.L.R. 315;

Bradstreet v. Gill, 22 N.M. 202, 160 P. 354;

Winans v. Hare, 46 Okl. 741, 148 P. 1052, 1053;

Bollong v. Corman, 125 Wash. 441, 217 P. 27, 28;

Pomeroy's Eq.Jur., 2d Ed., Vol. 5, § 2345, p. 5189.

[13] Hermance v. Weisner, 228 Wis. 501, 279 N.W. 608, 610, 117 A.L.R. 1437;

Thurston v. Holden, 45 Idaho 724, 265 P. 697, 698;

Davis v. Cheuvront, 82 W.Va. 182, 95 S.E. 651, 652.

[14] Hart v. Western R. R. Corp., 13 Metc., Mass., 99, 105, 106, 46 Am.Dec. 719;

Henderson-Achert Lithographic Co. v. John Shillito Co., 64 Ohio St. 236, 60 N.E. 295, 297, 83 Am.St.Rep. 745;

Pomeroy's Eq.Jur., 2d Ed., Vol. 5, § 2349.

[15] Gooch v. Gooch, 70 W.Va. 38, 73 S.E. 56, 58, 37 L.R.A.,N.S., 930;

Neilson v. Fry, 16 Ohio St. 552, 553, 91 Am.Dec. 110;

Richter v. Cummings, 60 Pa. 441;

Turner v. Teague, 73 Ala. 554;

Nettleton v. Ramsey County Land & Loan Co., 54 Minn. 395, 56 N.W. 128, 40 Am.St.Rep. 342;

Reimel v. Northwestern Trust Co., 304 Pa. 121, 155 A. 106;

Lackawanna Trust & Safe Dep. Co. v. Gomeringer, 236 Pa. 179, 84 A. 757.